IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO.: |
| | ) | |
| v. | ) | COMPLAINT AND DEMAND FOR JURY |
| | ) | TRIAL |
| SCOTT FRAKES, Director of the | ) | |
| Department of Corrections, In His | ) | |
| Individual and Official Capacity; DIANE J. | ) | |
| SABATKA-RINE, Former Director of | ) | |
| Institutions, Now Chief of Operations, In | ) | |
| Her Individual Capacity; RANDY T. | ) | |
| KOHL, Former Director of Health Services | ) | |
| at Department of Correctional Services; | ) | |
| JEFFREY A. DAMME, Medical Doctor, In | ) | |
| His Individual Capacity; CORRECT CARE | ) | |
| SOLUTIONS LLC; BARBARA LEWIN, | ) | |
| Warden of Omaha Correctional Center, In | ) | |
| her individual capacity, ROB BRITTEN, In | ) | |
| His Individual Capacity, Facility Prison | ) | |
| Rape Elimination Act Compliance Manager | ) | |
| of Omaha Correctional Center; | ) | |
| KATHLEEN OGDEN, Medical Doctor and | ) | |
| Omaha Correctional Center Facility Health | ) | |
| Administrator, In Her Individual Capacity, | ) | |
| MARGARET ANTLEY, Physician | ) | |
| Assistant at Omaha Correctional Center, In | ) | |
| her Individual Capacity, THOMAS DAVIS, | ) | |
| Former Housing Unit Manager at Omaha | ) | |
| Correctional Center, In his Individual | ) | |
| Capacity; RICHARD MARTIN, Current | ) | |
| Housing Unit Caseworker at Omaha | ) | |
| Correctional Center, In his Individual | ) | |
| Capacity, RYAN LAFAVE, Nursing | ) | |
| Supervisor at Omaha Correctional Center, in | ) | |
| His Individual Capacity, RICH | ) | |
| CRUICKSHANK, Current Warden of | ) | |
| Omaha Correctional Center, In His | ) | |
| Individual capacity. | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**COMES NOW** the Plaintiff, Jane Doe, and for her cause of action against individual defendants and defendant Frakes in his individual and official capacity, alleges and states as follows:

1. This is an action for injunctive and monetary relief against the Defendants for acts in violation of 42 U.S.C. § 1983, of Plaintiff's Eighth Amendment and Due Process Rights as guaranteed by the Fourteenth amendment to the US Constitution, and for costs and attorney's fees pursuant to 42 U.S.C. §1988.

2. Venue is proper in this court because the Plaintiff lives in Omaha Douglas County Nebraska

### PARTIES

3. Plaintiff is a resident of Douglas County Nebraska, having previously been an inmate at Tecumseh State Correctional Institute, currently incarcerated at Omaha Correctional Center.  Plaintiff brings this action under an assumed name due to the fact that she is a victim of sexual assault, .

4. Defendant Scott Frakes is the Director of the Department of Corrections and was at relevant times during the facts which occurred as alleged herein. Defendant Frakes is sued in his individual capacity. Defendant Frakes is also sued in his official capacity only for injunctive and other relief.

5. Defendant Diane J. Sabatka-Rine was the Deputy Director of Institutions and is now the Chief of Operations. Defendant Sabatka-Rine is sued in her individual capacity.

6. Defendant Randy T Kohl was the deputy director of health services at the department of correctional services. Defendant Kohl is sued in his individual capacity.

7. Defendant Jeffrey A Damme was a medical doctor who performed medical treatment consultation and services for the Nebraska Department of Corrections through Correct Care Solutions. Defendant Damme is sued in his individual capacity.

8. Defendant Correct Care Solutions is a Kansas corporation, with home offices in Nashville, Tennessee. Defendant Correct Care Solutions contracted with the State of Nebraska to provide medical services for inmates incarcerated at the Tecumseh, Nebraska facility. Correct Care Solutions' employees and agents evaluated and treated Plaintiff while she was held at the facility in Tecumseh.

9. Defendant Barbara Lewin was the Warden of Omaha Correctional Center and had been in this position since at least 2017. Defendant Lewin is sued in her individual capacity.

10. Defendant Rob Britten is the Facility Prison Rape Elimination Act (PREA)

Compliance Manager for the Omaha Correctional Center and has been in this position since at least 2017. As the Facility PREA Compliance Manager for Omaha Correctional Center, Defendant Britten is responsible for ensuring that transgender inmates such as the Plaintiff are treated in a manner which complies with federal regulations. Defendant Britten is sued in his individual capacity.

11. Defendant Kathleen Ogden is a Medical Doctor employed by the Nebraska Department of Corrections as the Facility Health Service Administrator at Omaha Correctional Center. Ogden has been in this position since at least 2017 and was responsible for the Plaintiff's medical care at times relevant to this complaint. Defendant Ogden is sued in her individual capacity.

12. Defendant Margaret Antley, is a Physician Assistant  employed by the Nebraska Department of Corrections at the Omaha Correctional Center  She is sued in her individual capacity.

13. Defendant Thomas Davis was the J-2 Housing Unit Manager at Omaha Correctional Center.  He is being sued in his individual capacity.

14. Defendant Richard Martin, is the  J-2 Housing Unit Caseworker at Omaha Correctional Center.  He is being sued in his individual capacity.

15. Defendant Ryan LaFave is a Nurse Supervisor employed by the Nebraska Department of Corrections at Omaha Correctional Center. LaFave has been

in this position since at least 2016 and was responsible for the Plaintiff's

medical care at times relevant to this complaint. Defendant LaFave is sued in

his individual capacity.

16. Defendant Rich Cruickshank is the current Warden of Omaha Correctional

Center. Defendant Cruickshank is sued in his individual capacity.

## FACTS

17. Plaintiff is a transgender individual who was transitioning to be a woman at

the time of her conviction.

18. Previous to her incarceration Plaintiff was diagnosed with Gender Identity

Disorder, which is now referred to as Gender Dysphoria.

19. Gender Dysphoria is a medical condition experienced by transgender

individuals in which the incongruity between their assigned gender and their

actual gender identity is so severe that it impairs the individual's ability to

function.

20. Plaintiff was convicted of forgery in the 2nd degree on July 8, 2013, for

writing a fraudulent check to purchase a golden retriever dog.  Plaintiff was

given a habitual criminal sentence enhancement adding a mandatory

minimum of ten years to her sentence.

21. Defendant Frakes in his official capacity as Director of Department of

Corrections was notified of Plaintiff's medical condition when she was

sentenced and was being evaluated for classification and placement at the Nebraska Department of Corrections Diagnostic and Evaluation center in 2013.

22. Plaintiff requested medical treatment for her condition in 2013.

23. At the time of the Plaintiff's sentencing, and at least through the summer of 2016, the Nebraska Department of Corrections had an inmate classification policy which required an override to maximum security classification if an inmate's sentence was for longer than 8 years irrespective of the inmate's strengths, weaknesses, basic needs, perceived dangerousness, estimated escape potential and general correctional needs.

24. As a result of the Plaintiff's length of sentence, she was assigned to maximum security classification and placed at Tecumseh.

25. While at the Tecumseh facility and while she continually requested medical treatment for her Gender Dysphoria  Plaintiff was told by Defendant Damme and Defendant Kohl that there was no medical need for her requested treatment.

26. Defendant Frakes in his official capacity was able to confirm the diagnosis of Gender Dysphoria when the Plaintiff, at his request, submitted to an evaluation on or about December 7, 2015 after years of her requesting treatment for her condition.

27. The email from the legal department of corrections affirming the diagnoses and the need to develop a treatment plan was delivered to Plaintiff's representative with a copy to Defendant Kohl and Defendant Frakes among others.

28. On January 2, 2016, after the recommendation that a treatment plan be adopted to treat Plaintiff's condition Defendant Damme indicated that no one in the medical department was aware of the decision and she would have to go to a specialist because "he had no experience in the treatment of such disorders", despite his earlier assertion that she did not have medical need of the treatment.

29. Finally, on April 7, 2016 Plaintiff was supplied prescribed medications to treat her condition.

30. On September 3, 2016 the Plaintiff was transferred to Omaha Correctional Center.

31. On October 4, 2016 the Plaintiff wrote a Kite to staff at Omaha Correctional Center requesting that she be given a medical pass to use the restroom as she does not stand and use urinals. In a reply dated October 6, 2016 authored and signed by Defendant Kathleen Ogden the Plaintiff was told, "it is my understanding that you still have anatomy to be able to use a urinal. You can sit and use the urinal if you are unable to stand".

32. After her transfer to Omaha Correctional Center Plaintiff was placed in a dorm setting with 8 men to the cell and 54 men sharing the bathroom shower area.

33. Through out the time Plaintiff has been incarcerated the showers lacked privacy and all men and the plaintiff were required to shower at the same time. Section Seven of the Prison Rape Elimination Act provides that, "transgender inmates shall be given the opportunity to shower separate from other inmates".

34. Plaintiff was finally provided a separate shower time November 6, 2017, a length of time after she had contacted the PREA officer, Rob Britten, however thereafter she was not consistently let out of her cell at the designated time so that she could actually shower then and when she reached out to Rob Britten, PREA Coordinator he indicated that he had said they should make it available and thus it was "out of his hands".

35. Plaintiff was ultimately allowed to take private showers, after her work day around 1700 hours and was being let out of her cell for this purpose, however, after she was interviewed about the issue of getting private showers and after she explained that she was allowed to shower at 17:00 hours, Defendant Davis then changed the time back to 6:05 a.m. before her work day.  Plaintiff grieved this issue  however she was denied the later

shower time which was after her work day.

36. On Friday February 7, 2020, Defendant Davis told Doe that he was moving a particular inmate into her cell.  Plaintiff begged Davis not to place this particular inmate in her cell because it made her feel unsafe due to his conviction for sexual assault and her being a sexual assault victim.

37. On February 9th after verifying that they still intended to place this inmate in her cell Defendant Cruickshank threatened to put her in the hole.

38. Plaintiff stated to Defendant Cruickshank that PREA Section 115.43 Section A indicates inmates at high risk for sexual victimization shall not be placed in involuntary segregated housing unless an assessment of all available alternatives has been made and a party can only be held for 24 hours while completing the assessment.

39. Defendant Cruickshank yelled at the Plaintiff and kicked her out of his office and told her that she "doesn't run his prison, he runs his prison."

40. Throughout the Plaintiff's imprisonment she has been housed with persons convicted of rape and murder.   When plaintiff tried to discuss her cell assignment with Defendant Thomas Davis he objected to her trying to choose her own cellmate, rather than her advocating for her safety and accountability.

41. After the disagreement with Defendant Davis and Defendant Cruikshank set

out above at paragraphs 36-39, Plaintiff was placed with the objectionable inmate. The objectionable inmate wouldn't stop touching plaintiff and playing with her in her sleep. Doe complained daily to staff to let them know it was not working out. He rubbed something on her lips while she was sleeping. After the Plaintiff sent an email to a friend outside the facility the objectionable inmate was moved from her cell and interviewed about he assaults on her by this inmate.

42. While at Omaha Correctional Center Plaintiff has been continually harassed by Defendant Housing Unit Caseworker Richard Martin. Martin continues to call the Plaintiff "Mr. Sir" and "gentleman" despite the Plaintiff's gender assignment.

43. Section 8, Subpart c, of the Prison Rape Elimination act provides that correctional center staff shall consult an inmates' gender assignment when interacting with an inmate; "eg., use of prononouns, searches, commissary items, etc."

44. Defendant Martin also watches the Plaintiff while she is using the restroom and on more than one instance has entered the Plaintiff's cell off camera while she was sleeping unannounced.

45. Section 115.6 (8) of the Prison Rape Elimination Act indicates that sexual abuse of an inmate by a staff member includes acts of voyeurism by staff

members, contractors, or volunteers. The same section defines Voyeurism

by a staff member, contractor, or volunteer as an "invasion of privacy of an

inmate by staff for reasons unrelated to official duties, such as peering at an

inmate who is using the toilet in his or her cell to perform bodily functions".

46. Plaintiff has filed grievances regarding her treatment as alleged above,

however the Grievances have been denied.  Defendant Thomas Davis signed

the denial of the grievances.

47. Per 115.11(c) of the Prison Elimination Act, "the warden at each institution

must ensure that all aspects of this Program Statement are implemented".

The statute also provides that he or she must assign an institution PREA

Compliance manager, who maintains responsibility for compliance with the

Bureau of Prison's  Sexually Abusive Behavior and Intervention Program.

Defendant Britten has been assigned as the PREA compliance manager at

Omaha Correctional Center.

48. Defendant Sabatka-Rine on November 30, 2016 denied Plaintiff proper

make up and underwear items to wear and to treat her gender dysphoria.

49. Per Section 14 of the Prison Rape Elimination Act, transgender inmates

"will have the opportunity to have undergarments of their identified gender

even if they are not housed with inmates of the identified gender.

Institutional laundry will have available institutional undergarments that

fulfill the needs of transgender inmates".

50. Plaintiff once again requested to be issued female undergarments and received the following response signed by (unknown) and dated November 6, 2017 via Grievance Form 2017-8544:

> "You contend while housed at the Omaha Correctional Center (OCC) that you believe you need to be provided female bras and panties due to the fact that you are a transgender woman. The OCC Warden has received your concerns in this matter and previously advised you that female panties have not been deemed to be a medical necessity for you. Female panties will not be issued to you, nor will they be approved for your purchase."

51. Not only was this denial in direct violation of Section 14 of the Prison Rape Elimination Act, but it was executed by warden Barbara Lewin, whose responsibility it is to ensure facility compliance with the Prison Rape Elimination Act per section 115.11(c)

52. On May 4, 2018, Plaintiff let the medical technician know that she was declining her one morning medication, due to side effects, but was still taking the same evening medication, until she could get in to review the situation with her physician.

53. As a result of declining her morning medication, that medications was

denied her allegedly pursuant to orders from the "Medical department" which include Defendants Ogden and Kohl, according to the Grievances that Plaintiff submitted.

54. On June 19, 2018 Plaintiff was examined by Dr. Jean Amoura a consultant, at the Omaha Correctional Center. Plaintiff was diagnosed with diagnosed with Gender Dysphoria (DSM-5, 302.85) and prescribed estrogen treatments and testosterone blockers. The Plaintiff continues to be denied her necessary medical treatment.

55. On  June 26, 2018 the Plaintiff wrote a Kite requesting that she be allowed to take her medications sublingually as prescribed by Dr. Amoura in order to mitigate the potential for liver damage. In a response authored and signed by Nurse Manger Ryan LaFave on July 2, 2018 a representative from Omaha Correctional Center threatened the Plaintiff, stating, "If you prefer—your estrogen could be discontinued so that the possibility of liver damage is even less?"

56. On June 28, 2018, Dr. Amoura indicated that it is medically necessary the Plaintiff receives a vaginoplasty in addition to her current treatment.

57. On July 5, 2018 the Plaintiff requested that she be seen by a specialist. Without explanation, this request was denied by Physician Assistant Margaret Antley.

58. Despite Plaintiff's clear medical condition, the Defendant's employees have refused to allow the Plaintiff to take her medications as prescribed, have discontinued her prescribed medication and have threatened to withhold medication from the Plaintiff altogether.

59. On June 30, 2018 Dr. Katheleen Odgen cancelled the Plaintiff's Spironolactone treatment.

60. Plaintiff has grieved all of the denials all the way up to and including the Director, Defendant Frakes however the Defendant Frakes, Sabatka -Rine and Kohl continue to deny her requests for proper medical treatment.

## CAUSE OF ACTION

61. Plaintiff incorporates all allegations in paragraphs one through 55 as though fully set out herein verbatim.

62. At all times, the individual Defendants were acting in their individual capacity, and were acting under color of state law.

63. The Eighth Amendment, as applied to prisoners through the Due Process Clause of the 14th Amendment, requires that inmates receive all medically necessary care and that they not be exposed to cruel and unusual punishment.

64. As a result of Defendant's actions, Plaintiff has suffered and continues to suffer hardship, great emotional distress, humiliation, embarrassment,

inconvenience, loss of enjoyment of life which entitles her to compensatory and punitive damages.

65. The plaintiff seeks an injunction to preclude the Defendant Frakes from continuing to perform the acts alleged herein and to provide for her medical treatment as fully set out above.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff respectfully requests this court to assume jurisdiction over this case and:

a) Award damages to compensate Plaintiff for pain and suffering, inconvenience, emotional distress, and humiliation;

b) Assess punitive damages against the individual Defendants to the maximum extent allowed by law;

c) An Injunction requiring the State Defendant provide Plaintiff with all medically necessary care;

d) Award the Plaintiff fair and reasonable attorney fees herein incurred, and

e) Award the Plaintiff such further relief as the Court deems just and proper.

## REQUEST FOR JURY TRIAL

Plaintiff hereby requests that a Jury Trial be held in Omaha, Nebraska.

**JANE DOE, Plaintiff**,

By_Joy Shiffermiller_____
Joy Shiffermiller, #18164

Abby Osborn, #24527
Shiffermiller Law Office, P.C., L.L.O.
1002 G Street
Lincoln, Nebraska 68508
402-484-7700
402-484-7714 (fax)

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 31st  Day of March, 2020, I served the above
and forgoing Complaint via email to the following:

Phoebe L Gydesen
Nebraska Attorney General's Office
2115 State Capitol Building
Lincoln, Nebraska 68509
phoebe.gydesen@nebraska.gov

Renee Eveland
Cline Williams Wright Johnson &
Oldfather, L.L.P.
233 South 13th Street, #1900
Lincoln, Nebraska 68508

/s/ Joy Shiffermiller_____
                    Joy Shiffermiller