IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JANE DOE,<br><br>            Plaintiff,<br><br>    vs.<br><br>SCOTT FRAKES, Director of the Department of Corrections, In His Individual and Official Capacity; DIANE J. SABATKA-RINE, Former Director of Institutions, Now Chief of Operations, In Her Individual Capacity; RANDY T. KOHL, Former Director of Health Services at Department of Correctional Services; JEFFREY A. DAMME, Medical Doctor, In His Individual Capacity;   CORRECT CARE SOLUTIONS LLC, BARBARA LEWIN, Warden of Omaha Correctional Center, In her individual capacity; ROB BRITTEN, In His Individual Capacity, Facility Prison Rape Elimination Act Compliance Manager of Omaha Correctional Center; KATHLEEN OGDEN, Medical Doctor and Omaha Correctional Center Facility Health Administrator, In Her Individual Capacity; MARGARET ANTLEY, Physician Assistant at Omaha Correctional Center, In her Individual Capacity; THOMAS DAVIS, Former Housing Unit Manager at Omaha Correctional Center, In his Individual Capacity; RICHARD MARTIN, Current Housing Unit Caseworker at Omaha Correctional Center, In his Individual Capacity; RYAN LAFAVE, Nursing Supervisor at Omaha Correctional Center, in His Individual Capacity; and RICH CRUICKSHANK, Current Warden of Omaha Correctional Center, In His Individual capacity,<br><br>            Defendants. | **8:20CV128**<br><br><br><br>**MEMORANDUM AND ORDER REGARDING CERTAIN DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |

1

A transgender inmate[1] in the Nebraska correctional system who is transitioning to female brought this action pursuant to 42 U.S.C. § 1983 alleging violation of her rights under the Eighth Amendment against various employees of the Nebraska Department of Correctional Services (NDCS) and seeking injunctive and monetary relief. Filing 1 at 2–5, 14 (identifying the nature of the action and the parties). This case is before the Court on the March 28, 2022, Motion for Judgment on the Pleadings, Filing 66, by Defendants Scott Frakes, Diane Sabatka-Rine, Barbara Lewien,[2] Rob Britten, Thomas Davis, Richard Martin, Ryan LaFave, and Rich Cruickshank (the Moving Defendants), all in their individual capacities.[3] The Moving Defendants' Motion is granted.

## I.  INTRODUCTION

### A.  Synopsis

The Court construes Plaintiff's claim to attempt to allege violation of two aspects of the Eighth Amendment right to be free from cruel and unusual punishment: (a) her right to receive all medically necessary care for her gender dysphoria, and (b) her right to be protected from another inmate. The Court concludes that judgment on the pleadings must be entered in favor of the Moving Defendants on the first alleged violation. As explained more fully below, Scott Frakes is the only Moving Defendant against whom any allegations are made concerning the two- to three-year period following Plaintiff's conviction during which she alleges that she was completely denied necessary medical treatment. However, there are no sufficient allegations that Frakes knew

---

[1] Plaintiff Jane Doe alleges that she "brings this action under an assumed name due to the fact that she is a victim of sexual assault." Filing 1 at 2 (¶ 3).

[2] The Complaint names "Barbara Lewin" as a Defendant, but the Moving Defendants state that the correct spelling of her surname is "Lewien." Filing 67 at 4 n2.

[3] Defendant Frakes is the only Defendant also sued in his official capacity. Filing 1 at 2. The claims against him in his official capacity are not at issue in the Motion for Judgment on the Pleadings.

2

Plaintiff had been diagnosed with gender dysphoria during that time. Plaintiff also does not allege that any of the Moving Defendants intentionally interfered with any treatment that had been prescribed for that condition, as distinct from denial of treatment suggested by regulations under the Prison Rape Elimination Act of 2003 (PREA).[4] Further, denial of grievances is insufficient to impose liability. Plaintiff alleges that one Moving Defendant with medical training threatened to refuse her prescribed care, but that allegation lacks a plausible factual basis.

The Court concludes that most of the Moving Defendants are also entitled to judgment on the pleadings on the claim of violation of Plaintiff's right to be protected from another inmate because they were not personally involved in that violation. The two Moving Defendants who were allegedly personally involved in that violation are also entitled to judgment on the pleadings on that part of Plaintiff's claim. The Court finds no support in controlling precedent for the notion that a substantial risk of harm or deliberate indifference to that harm can be plausibly inferred from a prospective cellmate's conviction of sexual offenses coupled with the alleged vulnerability of a transgender inmate transitioning to a woman in a men's prison. Plaintiff's allegations simply invite the Court to speculate that there was either a substantial risk of harm or deliberate indifference by

---

[4] The PREA is now codified at 34 U.S.C. §§ 30301–30309, although it was originally codified at 42 U.S.C. §§ 15601–15609. As the Ninth Circuit Court of Appeals explained,

> Congress enacted the PREA in 2003 by unanimous consent to "establish a zero-tolerance standard for the incidence of prison rape in the United States" and to "make the prevention of prison rape a top priority in each prison system[.]" 34 U.S.C. § 30302(1)–(2). The Act directed the Attorney General to "publish a final rule adopting national standards for the detection, prevention, reduction, and punishment of prison rape." *Id.* § 30307(a)(1). The rule established standards for investigating and responding to allegations of sexual abuse committed against prison inmates. 28 C.F.R. §§ 115.61–68, 115.71–73. When an investigation substantiates allegations of sexual abuse committed by prison staff, the presumptive disciplinary measure is termination; for sexual abuse committed by inmates, the rule provides for disciplinary sanctions. 28 C.F.R. §§ 115.76, 115.78.

*Bearchild v. Cobban*, 947 F.3d 1130, 1137 (9th Cir. 2020).

prison officials to that risk. Furthermore, the Plaintiff has not plausibly alleged that she suffered more than *de minimis* injuries from the Defendants' alleged failure to protect her.

For these and other reasons set out more fully below, the Moving Defendants' Motion for Judgment on the Pleadings is granted.

### B.  Factual Background

This factual background is drawn from Plaintiff's Complaint. However, because the Motion for Judgment on the Pleadings now before the Court turns on the sufficiency of the pleadings against individual Moving Defendants, the Court will consider the sufficiency of those allegations in its legal analysis below.

Plaintiff alleges that she is a transgender individual who had been diagnosed with gender dysphoria and was transitioning to be a woman at the time of her conviction in 2013. Filing 1 at 5. She was given a maximum-security classification and placed at Tecumseh State Correctional Institute. Filing 1 at 2, 6. While there, Plaintiff continually requested medical treatment for her gender dysphoria, but she was told by non-moving Defendants that there was no medical need for such treatment. Filing 1 at 6. After an evaluation in December 2015, her diagnosis was confirmed; in January 2016, a treatment plan was adopted; and in April 2016, Plaintiff was supplied with prescribed medications to treat her condition. Filing 1 at 6–7. In September 2016, Plaintiff was transferred to the Omaha Correctional Center. Filing 1 at 7. Plaintiff alleges that she was denied necessary medical treatment before and after her transfer to the Omaha Correctional Center and given unsafe placements with male inmates after her transfer. Filing 1 at 8–14.

### C.  Procedural Background

Plaintiff filed her Complaint in this action on March 31, 2020. Filing 1. All but one of the Moving Defendants filed separate Answers between April 21, 2020, and April 29, 2020. Filings

4

15, 17, 18, 20, 21, 23, and 24. The last Moving Defendant filed his Answer on May 29, 2020. Filing 35. The deadline for filing motions to dismiss and motions for summary judgment was May 4, 2021. Filing 45. That deadline was later extended to June 15, 2022. Filing 57. The Moving Defendants filed their Motion for Judgment on the Pleadings on March 28, 2022. Filing 66. Plaintiff filed her Brief in Opposition on April 11, 2022. Filing 69. The Moving Defendants filed their Reply Brief on April 18, 2022. Filing 72.[5] Thus, the Motion is now ripe for disposition.

## II. LEGAL ANALYSIS

### A. The Nature of the Plaintiff's Claims

The Court begins its analysis with the question of the nature of Plaintiff's claims, which is somewhat uncertain from Plaintiff's Complaint. Plaintiff pleads in paragraph 1 of her Complaint that "[t]his is an action for injunctive and monetary relief against the Defendants for acts in violation of 42 U.S.C. § 1983, of Plaintiff's Eighth Amendment and Due Process Rights as guaranteed by the Fourteenth amendment to the US Constitution, and for costs and attorney's fees pursuant to 42 U.S.C. § 1988." Unfortunately, for the reasons stated below, this statement of Plaintiff's claims is more confusing than helpful.

---

[5] Two other dispositive motions filed June 15, 2022, are also pending before the Court: (1) a Motion for Summary Judgment, Filing 84, by Defendants Dr. Jeffrey Damme and Correct Care Solutions; and (2) a Motion for Summary Judgment, Filing 87, by Defendant Frakes, in his official and individual capacities, and defendants Diane Sabatka-Rine, Randy Kohl, Barbara Lewien, Rob Britten, Kathleen Ogden, Margaret Antley, Thomas Davis, Richard Martin, Rich Cruickshank, and Ryan LaFave, in their individual capacities. Filing 88 (this list of the movants for summary judgment in the supporting brief is different from the list in the motion). The Court will not address those motions at this time. The second Motion for Summary Judgment involves the same Moving Defendants as the Motion for Judgment on the Pleadings now before the Court, as well as others, but the Moving Defendants represent in their summary judgment motion that, "[t]o the extent possible, [Moving] Defendants do not duplicate arguments briefed in support of th[e] Motion [for Judgment on the Pleadings]." Filing 90 at 42 n.3. Notwithstanding that the Moving Defendants' Motions do not address the same arguments, disposition of their Motion for Judgment on the Pleadings may make it unnecessary for the Court to consider some parts of their Motion for Summary Judgment.

1.  *No Claims for "Violations" of § 1983 or Due Process*

First, of course, one cannot "violate" § 1983.[6] Second, one would look in vain for any allegation of a due process violation in the Complaint. Instead, the only other reference to due process in the Complaint appears in paragraph 63 in the part of the Complaint identified as Plaintiff's "Cause of Action":

> The Eighth Amendment, as applied to prisoners through the Due Process Clause of the 14th Amendment, requires that inmates receive all medically necessary care and that they not be exposed to cruel and unusual punishment.

Filing 1 at 15 (¶ 63). This paragraph is more illuminating than paragraph 1: It suggests that the thrust of Plaintiff's claim is violation of the Eighth Amendment, not a violation of the Due Process Clause of the Fourteenth Amendment. This paragraph also suggests that the role of the Due Process Clause of the Fourteenth Amendment is to make the Eighth Amendment applicable to prisoners. Even so, the Court finds it necessary to clarify the interplay between the Eighth Amendment and the Fourteenth Amendment in this litigation.

---

[6] As another District Court in the Eighth Circuit recently explained,

> Section 1983 was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685 (1978). Nevertheless, Title 42, United States Code, Section 1983 provides no substantive rights. See *Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Graham v. Conner*, 490 U.S. 386, 393-94 (1989); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979). "One cannot go into court and claim a 'violation of [Section] 1983'—for [Section] 1983 by itself does not protect anyone against anything." *Id.* at 617. Rather, Section 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983; see also *Albright*, 510 U.S. at 271 (stating that Section 1983 "merely provides a method for vindicating federal rights elsewhere conferred."); *Graham*, 490 U.S. at 393-94 (same); *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980) ("Constitution and laws" means Section 1983 provides remedies for violations of rights created by federal statute, as well as those created by the Constitution.). To state a claim under Section 1983, a plaintiff must establish: (1) the violation of a right secured by the Constitution or laws of the United States and (2) the alleged deprivation of that right was committed by a person acting under color of state law. See *West v. Atkins*, 487 U.S. 42, 48 (1988).

*McDowell v. Anamosa State Penitentiary*, No. 22-CV-1-CJW-KEM, 2022 WL 1202760, at *3 (N.D. Iowa Apr. 22, 2022).

2. *The Interplay Between the Eighth and Fourteenth Amendments on a Claim for Denial of Necessary Medical Care*

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Johnson v. Leonard*, 929 F.3d 569, 575 (8th Cir. 2019) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). On the other hand, "[a] pretrial detainee's deliberate indifference claim is governed by the Fourteenth Amendment which extends to detainees at least the same protections that convicted prisoners receive under the Eighth Amendment." *Perry v. Adams*, 993 F.3d 584, 587 (8th Cir. 2021); *Hott v. Hennepin Cnty.*, 260 F.3d 901, 905 (8th Cir. 2001) ("Hott's status as a pre-trial detainee [in a county jail] placed him outside the protections of the Eighth Amendment proscription against cruel and unusual punishment, which applies only to convicted prisoners. The Fourteenth Amendment guarantees pre-trial detainees at least as many protections as does the Eighth Amendment, however, and extends to them as well protection from deprivations that are intended to punish." (internal citations omitted)). Plaintiff is a convicted prisoner, not a pretrial detainee. Thus, the Eighth Amendment not the Fourteenth Amendment applies to her claim of denial of necessary medical care. *Johnson*, 929 F.3d at 575.

On the other hand, "[d]eliberate indifference to an inmate's serious medical needs violates the Eighth Amendment as applied to the States by the Fourteenth Amendment." *Hartsfield v. Colburn*, 491 F.3d 394, 396 (8th Cir. 2007). Thus, the Fourteenth Amendment makes the Eighth Amendment applicable to the state and state employees. *Id.* The claim for an Eighth Amendment violation may then be brought against "state actors" pursuant to 42 U.S.C. § 1983. *See Davis v. Buchanan Cnty.*, 11 F.4th 604, 617 (8th Cir. 2021), *cert. denied sub nom. Munger v. Davis*, 142 S.

Ct. 777 (2022). Thus, Plaintiff's claim for a violation of her Eighth Amendment rights, at least as to denial of necessary medical care, is brought pursuant to § 1983.

The Moving Defendants clearly understand this. Their brief in support of their Motion for Judgment on the Pleadings indicates that they understand Plaintiff's suit to be "under 42 U.S.C. § 1983 for alleged violations of the Eighth Amendment's prohibition against cruel and unusual punishment for allegedly failing to provide necessary medical care." Filing 67 at 1.

### 3. An Eighth Amendment Claim for Failure to Protect

Plaintiff contends that there is more to her Eighth Amendment claim than just failure to provide necessary medical care. In her Brief in Opposition, Plaintiff explains, "What [t]he Plaintiff makes clear in paragraph 63 of the complaint is that the plaintiff's complaint is that she did not receive all medically necessary care <u>and</u> that she should not be exposed to cruel and unusual punishment." Filing 69 at 1 (emphasis in the original); *see also* Filing 1 at 14 (¶ 63) ("The Eighth Amendment . . . requires that inmates receive all medically necessary care and that they not be exposed to cruel and unusual punishment."). In her Opposition Brief, Plaintiff clarifies that her separate "cruel and unusual punishment" claim is "that her personal safety was endangered by the Defendants" by "plac[ing] her in a cell with a convicted sex offender over her objection and to her great dismay." Filing 69 at 8. Thus, Plaintiff contends that "[s]eparate and apart from the denial of her necessary medical treatment, [she] has also properly stated a cause of action for cruel and unusual treatment contrary to the 8th amendment." Filing 69 at 10–11.

The Eighth Circuit Court of Appeals has explained that "[a] prison official violates the Eighth Amendment if he is deliberately indifferent to the need to protect an inmate from a substantial risk of serious harm from other inmates." *Vandevender v. Sass*, 970 F.3d 972, 975 (8th

Cir. 2020) (internal quotation marks and citations omitted). Thus, Plaintiff's claim of failure to protect her from another inmate is cognizable under the Eighth Amendment.

Again, the Moving Defendants recognize that Plaintiff might also be asserting such a claim. They observed in their opening brief, "While not clearly articulated, Doe seemingly attempts to allege an Eighth Amendment claim against Davis and Cruickshank for failing to protect her from harm." Filing 67 at 10.

### 4. No Claim for Violations of PREA

Finally, as to the nature of Plaintiff's claims, the Moving Defendants characterize Plaintiff's Complaint as "alleg[ing] violations of the Prison Rape Elimination Act of 2003 (PREA)." Filing 67 at 1. They point to Plaintiff's numerous allegations of alleged PREA violations. Filing 67 at 3–4. They contend, however, that PREA does not provide a private right of action nor the basis for a § 1983 claim for damages and declaratory relief. Filing 67 at 4–6. Almost the last thing Plaintiff states in her Opposition Brief is that "[t]he complaint does not allege a cause of action under PREA, though PREA also curtails some of the same violations as are actionable under the 8th and 14th amendment." Filing 69 at 11. In their Reply, the Moving Defendants assert that Plaintiff's PREA allegations do not advance her Eighth Amendment claim. Filing 72 at 2–3.

The Circuit Courts of Appeals to consider whether the PREA provides an inmate with a private right of action have concluded that it does not. *Johnson v. Garrison*, 859 F. App'x 863, 864 (10th Cir. 2021); *Bowens v. Wetzel*, 674 F. App'x 133, 137 (3d Cir. 2017); *Krieg v. Steele*, 599 F. App'x 231, 232 (5th Cir. 2015). Furthermore, the Eleventh Circuit Court of Appeals has held that that a violation of the PREA is not a *per se* violation of the Eighth Amendment. *Cox v. Nobles*, 15 F.4th 1350, 1361 (11th Cir. 2021), *cert. denied*, 142 S. Ct. 1178 (2022). Still further

that court concluded that a prisoner cannot "circumvent long-established Eighth Amendment jurisprudence by alleging a violation of the PREA in a conclusory fashion." *Id.* at 1361–62. Thus, the standard applicable to an Eighth Amendment failure-to-protect claim remains the standard set out in *Farmer v. Brennan*, 511 U.S. 825 (1994). *Id.* at 1362. At most, the court concluded, "PREA documents *could* put prison officials on notice of a substantial risk of serious harm to an inmate." *Id.* (emphasis in the original). Thus, Plaintiff cannot assert a claim based solely on PREA violations. Plaintiff concedes as much. Filing 69 at 11.

In this case, PREA violations also are not necessarily determinative of Plaintiff's Eighth Amendment failure-to-protect or serious-medical-needs claims. Plaintiff concedes as much in her Opposition Brief, despite her frequent reliance on PREA provisions in her Complaint. In her Opposition Brief, Plaintiff never argues that her allegations of PREA violations show she adequately pleaded either a claim of denial of necessary medical care or a claim of failure to protect her from another inmate.

5. *The Claims at Issue*

From the allegations in the Complaint and Plaintiff's clarifications in her Brief in Opposition, the Court construes Plaintiff's claim to be for injunctive and monetary relief pursuant to 42 U.S.C. § 1983 alleging violation of her Eighth Amendment rights not to be subjected to cruel and unusual punishment, as those rights are applicable to state employees through the Fourteenth Amendment to the United States Constitution. *Cf.* Filing 1 at 2 (¶ 1). Plaintiff is attempting to allege violation of two distinct rights under the Eighth Amendment: (a) violation of her right to receive all medically necessary care for her gender dysphoria, and (b) violation of her right to be protected from another inmate. Filing 1 at 5 (¶ 18), 9 (¶¶ 36, 40), 14 (¶ 63). It also appears from

the Moving Defendants' briefing that they understand these to be the two parts of Plaintiff's Eighth Amendment claim. Filing 67 at 1, 10.

Having clarified what claims are at issue, the Court turns to the standards applicable to a motion for judgment on the pleadings pursuant to Rule 12(c). The Court will then consider in turn the sufficiency of Plaintiff's pleading of her "denial of medically necessary care" claim and her "failure to protect" claim against the Moving Defendants.

### B.  Rule 12(c) Standards

Rule 12(c) of the Federal Rules of Civil Procedure provides, "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Rule 12(h)(2)(B) expressly recognizes that "[f]ailure to state a claim upon which relief can be granted . . . may be raised . . . by a motion under Rule 12(c)," even though it may also be raised in a motion pursuant to Rule 12(b)(6). Indeed, the Eighth Circuit Court of Appeals has recognized "that the distinction between a Rule 12(c) and a Rule 12(b)(6) motion is 'purely formal.'" *Sletten & Brettin Orthodontics, LLC v. Cont'l Cas. Co.*, 782 F.3d 931, 934 (8th Cir. 2015) (quoting *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990)).

Specifically, "a Rule 12(b)(6) motion cannot be filed after an answer has been submitted," but pursuant to Rule 12(h)(2), a motion for failure to state a claim upon which relief can be granted can be filed under Rule 12(c) after the pleadings are closed. *Westcott*, 901 F.2d at 1488. That distinction in timing aside, a court reviews a Rule 12(c) motion under the same standards that govern a Rule 12(b)(6) motion. *Id.*; *accord Spagna v. Phi Kappa Psi, Inc.*, 30 F.4th 710, 715 (8th Cir. 2022) ("We review the grants of motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) and motions for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) applying the same standard.").

11

As to those standards,

> At this stage of litigation, [courts] accept as true the facts alleged in [the plaintiff's] complaint and grant all reasonable inferences in her favor, determining whether she pled "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

*Spagna*, 30 F.4th at 715. Further,

> "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*Iqbal*, 556 U.S. at 678]. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). We assess plausibility by "draw[ing] on [our own] judicial experience and common sense." *Id.* at 679, 129 S.Ct. 1937. Further, we "review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation." *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010).

*Haney v. Portfolio Recovery Assocs., L.L.C.*, 895 F.3d 974, 981 (8th Cir. 2016); *see also Buckley v. Hennepin Cnty.*, 9 F.4th 757, 760 (8th Cir. 2021) (explaining that courts "do not accept legal conclusions phrased as fact allegations"). In short, "the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *In re Pre-Filled Propane Tank Antitrust Litig.*, 893 F.3d 1047, 1056 (8th Cir. 2018) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955).

As a final point, the Court "may rely on materials 'necessarily embraced by the pleadings,' including exhibits attached to the complaint and matters of public record." *Buckley*, 9 F.4th at 760 (quoting *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015)). Because neither the Moving Defendants nor Plaintiff rely on any allegations in the Moving Defendants' Answers and no documents were attached to any of their Answers, the Court need not consider the extent to which it would be appropriate to consider such filings on a Rule 12(c) motion.

### C.  Plaintiff Does Not State a Claim for Denial of Necessary Medical Care Against Any Moving Defendants

#### 1.  The Parties' Arguments

As the Court has construed Plaintiff's Complaint, Plaintiff's first claim is for violation of her Eighth Amendment right to necessary medical care. Filing 1 at 15 (¶ 63). The Court concludes that judgment on the pleadings must be entered in favor of the Moving Defendants on this claim. The Moving Defendants argue that, because PREA violations are not enough standing alone to state a claim, the claims against Martin, Davis, Lewien, Cruickshank, and Sabtaka-Rine must be dismissed because Plaintiff fails to state violations of the Eighth Amendment right to necessary medical care by these Defendants. Filing 67 at 6. The Moving Defendants also argue that Plaintiff has not alleged a basis for personal liability of Frakes and Sabatka-Rine for any such violations, because they had no medical expertise and no responsibility for her medical care. Filing 7–8. The Moving Defendants next contend that Frakes's and Sabatka-Rine's denials of Plaintiff's grievances concerning her medical care are insufficient to impose liability on them. Filing 67 at 9. Finally, at least as to the medical treatment claims, the Moving Defendants argue that Plaintiff has pleaded no basis for LaFave's deliberate indifference, because he asked a question about care but did not plausibly threaten Plaintiff with withdrawal of care. Filing 67 at 9–10.

Plaintiff responds that there is ample case law demonstrating that gender dysphoria is a real condition, which prison officials cannot simply ignore. Filing 69 at 4. She argues prison officials refused to allow her necessary medical treatment for that condition for the first two to three years of her incarceration. Filing 69 at 5.[7] She also contends that courts have recognized that gender

---

[7] Plaintiff also argues that after her treatment plan was established, Defendants discontinued the necessary treatment. Filing 69 at 5. She argues that they did so not because they had another plan or did not think it was medically necessary but as a disciplinary measure for refusal to take her medication on one or two occasions. Filing 69 at 5. She

conforming clothing and cosmetics are medically necessary. Filing 69 at 6. Plaintiff discusses the allegations against only one Moving Defendant by name, Defendant LaFave, whom she asserts threatened to discontinue her estrogen treatment when she asked to take it sublingually to avoid damage to her liver. Filing 69 at 5–6.

In reply, the Moving Defendants assert that Plaintiff "paints with broad strokes." Filing 72 at 1. They argue, however, that Plaintiff fails to recognize that liability for damages for a federal constitutional tort is personal, so that each defendant's conduct must be independently assessed. Filing 72 at 1.

### 2. *Eighth Amendment Medical Care Requirements*

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. "A state violates this prohibition when it is deliberately indifferent to a prisoner's serious medical needs." *De Rossitte v. Correct Care Sols., LLC.*, 22 F.4th 796, 802 (8th Cir. 2022).

Plaintiff does not allege that any of the Moving Defendants other than Defendant LaFave had any medical training. The Eighth Circuit Court of Appeals recently explained the standard for claims of denial of medical care by defendants without medical training, as follows:

> Prison personnel, like corrections officers, without medical training demonstrate deliberate indifference by "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* (footnotes omitted). Proof of deliberate indifference requires that an inmate show the following: "(1) he suffered from an objectively serious medical need, and (2) defendants knew of the need yet deliberately disregarded it." *Johnson v. Leonard,*

---

asserts her refusal to take her medication on those occasions was not even a violation of any prison rule or policy. Filing 69 at 5. This argument does not relate to any Moving Defendants, because the Complaint identifies other Defendants as involved in this conduct. Filing 1 at 12–13 (¶¶ 52–53); *see also Davis v. White*, 794 F.3d 1008, 1013 (8th Cir. 2015) ("As § 1983 liability for damages for a federal constitutional tort is personal, each defendant's conduct must be independently assessed.").

929 F.3d 569, 575 (8th Cir. 2019) (quoting *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004)).

*Rusness v. Becker Cnty.*, 31 F.4th 606, 614 (8th Cir. 2022). As to the first element, "[a]n objectively serious medical need is one that has been diagnosed by a physician as requiring treatment or one so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *De Rossitte*, 22 F.4th at 802. The second element is "subjective": It "requires [Defendants] to have recognized that a substantial risk of harm existed and kn[own] that their conduct was inappropriate in light of that risk." *Id.* (emphasis in the original) (internal quotation marks and citations omitted). This standard is "akin to that of criminal recklessness, requiring more than negligence." *Id.* (internal quotation marks and citations omitted).

It is important to add that, "[a]s § 1983 liability for damages for a federal constitutional tort is personal, each defendant's conduct must be independently assessed." *Davis v. White*, 794 F.3d 1008, 1013 (8th Cir. 2015). Similarly, "[t]o state a claim against a supervisor, a plaintiff must show that the supervising official, through his own individual actions, violated the Constitution." *Morris v. Cradduck*, 954 F.3d 1055, 1060 (8th Cir. 2020) (citing *Iqbal*, 556 U.S. at 676); *Marsh v. Phelps Cnty.*, 902 F.3d 745, 754 (8th Cir. 2018) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant [including supervisors], through the official's own individual actions, has violated the Constitution." (citing *Iqbal*, 556 U.S. at 676)).

### 3. Plaintiff Fails to Allege that Any Individual Defendant Was Deliberately Indifferent to a Diagnosed Condition or Prescribed Treatment

The Moving Defendants do not appear to dispute that, at least once Plaintiff was evaluated in December of 2015, Plaintiff had an objectively serious medical need where her gender dysphoria had been diagnosed by a physician as requiring treatment. *See De Rossitte*, 22 F.4th at 802

15

(defining serious medical need). However, Plaintiff contends that "Defendants in our case, refused to allow the necessary medical treatment for the first 2-3 years of her incarceration." Filing 69 at 5. Scott Frakes is the only Moving Defendant against whom any allegations are made concerning the period from Plaintiff's conviction in 2013 to 2016 during which Plaintiff contends that she was completely denied necessary medical treatment. *Davis*, 794 F.3d at 1013 ("As § 1983 liability for damages for a federal constitutional tort is personal, each defendant's conduct must be independently assessed.").

Plaintiff alleges that Frakes is the Director of the NDCS, Filing 1 at 2 (¶ 4); that Frakes learned of her medical condition in 2013 when she was sentenced and was being evaluated for classification and placement at the NDCS Diagnostic and Evaluation Center, Filing 1 at 5–6 (¶ 21); that Frakes confirmed her medical diagnosis of gender dysphoria after she had an evaluation in December 2015, Filing 1 at 6 (¶ 26); and that the legal department of the NDCS also notified Frakes of the need to develop a treatment plan for Plaintiff, apparently in January 2016, Filing 1 at 7 (¶ 27). These allegations do not plausibly suggest Frakes's liability for denial of medical treatment prior to 2016. *See Haney*, 895 F.3d at 981 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (internal quotation marks and citations omitted)).

There are no non-conclusory, plausible allegations that Frakes knew Plaintiff had been diagnosed with gender dysphoria and knew of the need for treatment of that condition as early as 2013 or at any time prior to 2016. *Rusness*, 31 F.4th at 614 (a claimant must prove "the defendants knew the need"). Plaintiff alleges only that she had been diagnosed with gender dysphoria prior to her conviction, Filing 1 at 5 (¶ 18), but she does not allege who made such a diagnosis and what record of that diagnosis if any was provided to Frakes. *See Haney*, 895 F.3d at 981 (explaining that

16

conclusory allegations "will not do" to defeat a Rule 12(c) motion). At most, Plaintiff's allegations are "merely consistent with" Frakes's knowledge of her diagnosis, but her allegations do not include enough facts to suggest that it is plausible that he knew of that diagnosis. *See Spagna*, 30 F.4th at 715 (explaining pleading requirements). Without such knowledge, Frakes could not have been deliberately indifferent to a need for treatment of Plaintiff's condition. *Rusness*, 31 F.4th at 614 (explaining that the second element of the claim requires proof that "the defendants knew of the need yet deliberately disregarded it"). Furthermore, Plaintiff pleads that Frakes confirmed her medical diagnosis of gender dysphoria after she had an evaluation in December 2015. Filing 1 at 6 (¶ 26). A reasonable inference from this allegation is that Frakes took appropriate steps to determine whether Plaintiff had a gender dysphoria medical condition requiring treatment.

Plaintiff also has not sufficiently alleged that, after her diagnosis of gender dysphoria was known at least to Frakes in 2016, any of the Moving Defendants intentionally interfered with any treatment that had been prescribed for that condition. *Rusness*, 31 F.4th at 614 (explaining deliberate indifference by a defendant without medical training involves "intentionally interfering with the treatment once prescribed"). Where Plaintiff has not alleged such knowledge on the part of the Moving Defendants, she cannot show that they recognized that there was a substantial risk of harm and knew that their conduct was inappropriate in light of that risk. *See De Rossitte*, 22 F.4th at 802 (explaining the requirements to prove subjective "deliberate indifference"). Plaintiff relies on violations of PREA treatment standards and the knowledge of some of the Moving Defendants of those PREA treatment standards. That reliance is misplaced. Plaintiff has not cited any decision of the Eighth Circuit Court of Appeals or any other federal Circuit Court of Appeals allowing PREA standards to stand in for prescriptions for specific medical treatment for a specific plaintiff, where defendants have no medical training. As mentioned previously, the Eleventh

17

Circuit Court of Appeals has held that violations of PREA are not *per se* violations of the Eighth Amendment. *Cox*, 15 F.4th at 1361.

Plaintiff's reliance solely on PREA violations, which are insufficient to establish Eighth Amendment violations, is apparent from examination of the allegations against the individual Moving Defendants. *See Davis*, 794 F.3d at 1013 ("As § 1983 liability for damages for a federal constitutional tort is personal, each defendant's conduct must be independently assessed."). Plaintiff alleges that Diane J. Sabatka-Rine was the Deputy Director of Institutions and is now the Chief of Operations for the NDCS. Filing 1 at 3 (¶ 5). Plaintiff alleges that Sabatka-Rine denied her proper make-up and underwear items to treat her gender dysphoria, contrary to the PREA. Filing 1 at 11–12 (¶¶ 49–49). Plaintiff alleges that Barbara Lewien, the Warden of the Correctional Center since at least 2017, Filing 1 at 3 (¶ 9), denied Plaintiff's grievance in 2017 for female bras and panties on the ground that they were not a medical necessity, even though Lewien was responsible for ensuring that the Omaha Correctional Center complied with PREA. Filing 1 at 12 (¶¶ 50-51). Plaintiff alleges that even though Rob Britten was the Facility PREA Compliance Manager for the Omaha Correctional Center since at least 2017, Filing 1 at 3–4 (¶ 10), it was not until "a length of time after she contacted the PREA officer, Rob Britten," that she was provided a separate shower time from male inmates as required by PREA. Filing 1 at 8 (¶ 34). She alleges that when she complained to Britten about not always being allowed her separate shower time, he said he had told corrections officers to allow her a separate shower time, so it was "out of his hands." Filing 1 at 8 (¶ 34). Plaintiff alleges that Thomas Davis, the J-2 Housing Unit Manager, Filing 1 at 4 (¶ 13), changed her shower time from after her work day to before her work day, but this allegation does not indicate whether this change required her to shower with male inmates, so it is not clear whether it was even an alleged PREA violation. Filing 1 at 8 (¶ 35). Again, Plaintiff

18

has not pleaded that she had any prescription from a medical professional for female undergarments, make-up, or separate shower times—even if the PREA and common sense suggest they might be helpful to the treatment of a person with gender dysphoria, at least in circumstances not involving incarceration.

Plaintiff also alleges Richard Martin, the J-2 Housing Caseworker, Filing 1 at 4 (¶ 14), "continually harassed" her by calling her "Mr. Sir." and "gentleman" despite her gender assignment. Filing 1 at 10 (¶ 42). Martin's alleged conduct is troubling because it is unprofessional, unnecessarily rude, and possibly demeaning. Nevertheless, it does not plausibly suggest "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Rusness*, 31 F.4th at 614 (stating the deliberate indifference standard); *see also Spagna*, 30 F.4th at 715 (explaining plausibility pleading requirements); *Haney*, 895 F.3d at 981 (explaining plausibility pleading requirements).[8]

Plaintiff alleges that Frakes and Sabatka-Rine also denied grievances related to her treatment. Filing 1 at 14 (¶ 60) (both Frakes and Sabatka-Rine). "[P]rison supervisors . . . cannot be held liable under § 1983 on a theory of respondeat superior." *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010). "Supervisors can, however, incur liability . . . for their personal involvement in a constitutional violation, or when their corrective inaction amounts to deliberate indifference to or tacit authorization of the violative practices." *Id.* (internal quotation marks and citations omitted). It follows from the requirements to prove interference with prescribed treatment to establish deliberate indifference, *see Rusness*, 31 F.4th at 614, that denying grievances that did not

---

[8] Plaintiff also alleges that Martin watches her while she is using the restroom and, on more than one occasion, he entered her cell unannounced and off camera while she was sleeping. Filing 1 at 10 (¶ 44). She does not explain how these allegations support either of her claims of Eighth Amendment violations, and she has not asserted any kind of invasion of privacy claim.

concern denial of prescribed medical treatment is not "corrective inaction" that is a sufficient basis for an Eighth Amendment medical treatment claim. *Langford*, 614 F.3d at 460; *see also Rowe v. Norris*, 198 F. App'x 579, 580 (8th Cir. 2006) (holding that a supervisor's involvement limited to denying some of a prisoner's grievances was insufficient to impose liability on the supervisor).

The only Moving Defendant who had medical training was Ryan LaFave, who allegedly has been a Nurse Supervisor employed by the NDCS at the Omaha Correctional Center since at least 2016 and who has been responsible for Plaintiff's medical care at relevant times. Filing 11 at 4–5 (¶ 15). When a medical professional is the defendant, an inmate alleging deliberate indifference to a serious medical need must show that the defendant's conduct was grossly incompetent or involved inadequate care that was so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care. *Redmond v. Kosinski*, 999 F.3d 1116, 1120 (8th Cir. 2021). Plaintiff's only allegation against LaFave is the following:

> On June 26, 2018 the Plaintiff wrote a Kite requesting that she be allowed to take her medications sublingually as prescribed by Dr. Amoura in order to mitigate the potential for liver damage. In a response authored and signed by Nurse Manager Ryan LaFave on July 2, 2018 a representative from Omaha Correctional Center threatened the Plaintiff, stating, "If you prefer—your estrogen could be discontinued so that the possibility of liver damage is even less?"

Filing 1 at 13 (¶ 55). Although Plaintiff asks the Court to infer a threat from LaFave's response, there are no other facts pleaded that plausibly suggest any threat was intended or that LaFave held any animus toward Plaintiff. *See Spagna*, 30 F.4th at 715 (explaining the Rule 12(c) plausibility pleading standard). The allegation that LaFave "threatened" Plaintiff is wholly conclusory. *See Buckley*, 9 F.4th at 760 (explaining that courts "do not accept legal conclusions phrased as fact allegations"); *Haney*, 895 F.3d at 981 (explaining that "labels and conclusion" are not enough to meet pleading requirements). The language attributed to LaFave may be "merely consistent with"

20

a threat—*i.e.*, a threat or refusal to provide essential care—but it does not cross the line between possibility and plausibility of any entitlement to relief. *See Spagna*, 30 F.4th at 715. Thus, it falls well short of what is required to state a claim against LaFave. *Id.*

In short, the Moving Defendants are entitled to judgment on the pleadings on the part of Plaintiff's Eighth Amendment claim alleging violation of her right to receive medically necessary care for her gender dysphoria.

### D.  Plaintiff Does Not State a Claim for Failure to Protect Her Safety

#### 1.  *The Relevant Allegations*

The Court concluded above in Section II.B. that Plaintiff is also attempting to assert a claim of violation of her Eighth Amendment right not to be exposed to cruel and unusual punishment in the form of failure to protect her safety. Only two of the Moving Defendants are alleged to have had any personal involvement in this violation. *See Davis*, 794 F.3d at 1013 ("As § 1983 liability for damages for a federal constitutional tort is personal, each defendant's conduct must be independently assessed."). Those Moving Defendants are Thomas Davis, who allegedly was the J-2 Housing Unit Manager at the Omaha Correctional Center, Filing 1 at 4 (¶ 13), and Rich Cruickshank, who allegedly is the current Warden of the Omaha Correctional Center. Filing 1 at 5 (¶ 16).

Plaintiff alleges that, on February 7, 2020, she begged Davis not to place a particular inmate with a conviction for sexual assault into her cell because she was a sexual assault victim. Filing 1 at 9 (¶ 36). She alleges that when she tried to discuss her cell assignment with Davis, he objected to her trying to choose her own cellmate "rather than advocating for her safety and accountability."

Filing 1 at 9 (¶ 40). She alleges that, despite her pleas, she was placed with an objectionable inmate who touched her and played with her in her sleep. Filing 9–10 (¶ 41).

Plaintiff alleges that on February 9, 2020, after she verified with unnamed corrections officers that the facility still intended to place the inmate she objected to in her cell, she complained to Cruickshank, but Cruickshank threatened to put her in the hole. Filing 1 at 9 (¶¶ 36–37). She alleges that she told Cruickshank that the PREA stated that inmates at high risk for sexual victimization should not be placed in involuntary segregated housing without an assessment of all available alternatives, and then the inmate can only be held for 24 hours while completing the assessment. Filing 1 at 9 (¶ 38). She alleges that, in response, Cruickshank yelled at her, kicked her out of his office, and told her that she "doesn't run his prison, he runs his prison." Filing 1 at 9 (¶¶ 37–39).

### 2. *The Parties' Arguments*

The Moving Defendants argue, first, that prison officials are not required to segregate indefinitely all inmates whose original crimes suggest that they might be capable of harm to other inmates. Filing 67 at 11. They also argue that there are no allegations that Plaintiff suffered harm from unspecified inmates, let alone allegations of facts sufficient to establish any individuals presented a pervasive risk of harm to her. Filing 67 at 11. The Moving Defendants argue that a single instance in which an inmate allegedly rubbed something on Plaintiff's lips and touched her while she was sleeping is insufficient to provide a reasonable inference of a pervasive risk of harm from that inmate prior to his placement in her cell to which Davis and Cruickshank were deliberately indifferent. Filing 67 at 12. Finally, they argue that Plaintiff has alleged no more than *de minimis* harm from the placement of the other inmate in her cell. Filing 67 at 12.

22

Plaintiff argues that her Complaint "makes clear that her personal safety was endangered by the Defendants." Filing 69 at 8. She explains that the basis for the claim is that "[t]he Defendants, knowing the plaintiff is a slight transgender individual and with the knowledge that she was vulnerable and had previously been sexually assaulted, placed her in a cell with a convicted sex offender over her objection and to her great dismay. As a result, she was victimized by the cellmate." Filing 69 at 8.[9]

### 3. Eighth Amendment Protection Requirements

The Eighth Circuit Court of Appeals has explained,

> A prison official "violates the Eighth Amendment if he is deliberately indifferent to the need to protect an inmate from a substantial risk of serious harm from other inmates." *Jackson v. Everett*, 140 F.3d 1149, 1151 (8th Cir. 1998) (quotation omitted). This claim has an objective component, whether there was a substantial risk of serious harm to the inmate, and a subjective component, whether the prison official was deliberately indifferent to that risk. *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000). To be liable, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). As prisons are inherently dangerous environments, "[i]t is not ... every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834, 114 S.Ct. 1970.

*Vandevender v. Sass*, 970 F.3d 972, 975–76 (8th Cir. 2020); *accord Axelson v. Watson*, 999 F.3d 541, 546 (8th Cir. 2021).

The court explained further,

> The Supreme Court in *Farmer* did not address "[a]t what point a risk of inmate assault becomes sufficiently substantial for Eighth Amendment purposes." 511 U.S. at 834 n.3, 114 S.Ct. 1970. Our cases both before and after *Farmer* have addressed the question. To establish defendants' deliberate indifference in failing to protect from assault by another inmate, [a prisoner] "must show that he was faced with a pervasive risk of harm and that the prison officials failed to respond

---

[9] Plaintiff also argues "the mere deprivation of sleep is actionable." Filing 69 at 9. She does not explain, however, what conduct allegedly deprived her of sleep and such conduct is not apparent from her Complaint.

reasonably to that risk." *Falls v. Nesbitt*, 966 F.2d 375, 378 (8th Cir. 1992) (quotation omitted); *see Smith v. Gray*, 259 F.3d 933, 934 (8th Cir. 2001). More specifically:

> a "pervasive risk of harm" may not ordinarily be shown by pointing to a single incident or isolated incidents, but it may be established by much less than proof of a reign of violence and terror in the particular institution. It is enough that violence and sexual assaults occur with sufficient frequency that prisoners are put in reasonable fear for their safety and to reasonably apprise prison officials of the existence of the problem and the need for protective measures.

*Andrews v. Siegel*, 929 F.2d 1326, 1330 (8th Cir. 1991) (cleaned up). This standard has been adopted by other circuits. *See Shrader v. White*, 761 F.2d 975, 978 (4th Cir. 1985).

*Vandevender*, 970 F.3d at 976–77.

### 4.   Plaintiff Has Not Plausibly Alleged a Risk of Harm and Deliberate Indifference to that Risk

In *Vandevender*, the court observed, "Most of our prior failure-to-protect cases arising out of an inmate-on-inmate assault have involved an attacker who was known to be a volatile, dangerous man; or who previously threatened or fought with the victim; or a victim who should have been better protected because of known prior inmate threats." *Id.* at 976 (internal citations omitted). Plaintiff has not alleged any of these scenarios in this case, however. Although she claims the prospective cellmate was dangerous to her because of his prior conviction for a sexual assault, she has not pleaded any facts plausibly suggesting he was a volatile, dangerous man. *Haney*, 895 F.3d at 981 (explaining the plausibility pleading standard). Plaintiff also has not alleged that the prospective cellmate ever threatened or fought with her prior to the alleged touching incident or that she had previously been subjected to inmate threats. *Vandevender*, 970 F.3d at 976 (describing these as two other typical situations in which failure-to-protect cases arise).

The case before the court in *Vandevender* was "different" from the typical scenarios, however, because it allegedly involved a general condition of confinement that posed an obvious

24

substantial risk of serious harm to all inmates, that is, inmates' unsupervised access to wooden boards that could be used as weapons. *Id.* In that case, the court considered whether there were plausible allegations that the assault was other than an isolated incident and whether assaults using a board as a weapon had happened before in the same area of the prison. *Id.* at 977. Plaintiff's allegations also do not fit that scenario, because she does not rely on some general condition of confinement as posing a risk of serious harm to her.

Instead, Plaintiff seems to suggest that this case is also "different," in that it involves allegations that the combination of the prospective cellmate's conviction of sexual assault and the Plaintiff's claimed particular vulnerability demonstrate the substantial risk of harm as well as the Defendants' deliberate indifference to that risk. Filing 69 at 8; Filing 1 at 36 (¶ 36). This "difference" is not sufficient in this case to state an Eighth Amendment failure-to-protect claim. The Moving Defendants are correct that "prison officials are not required to segregate indefinitely all inmates whose original crimes suggest they might be capable of further violence." Filing 67 at 11 (quoting *Curry v. Crist*, 226 F.3d 974, 978 (8th Cir. 2000)). The court in *Curry* held that prison officials are not deliberately indifferent to other inmates by placing an inmate convicted of a violent crime in general population where they do so based on the inmate's non-violent behavior at the institution. 226 F.3d at 978. Plaintiff has not alleged anything about the prospective cellmate's conduct in prison prior to placement in her cell, so she has not plausibly pleaded his behavior in the prison gave prison officials any reason he was not fit to be a cellmate in general population.

The Plaintiff has not cited any precedent let alone any controlling precedent holding that a victim's particular vulnerability coupled with the potential cellmate's prior conviction can establish either a prison official's knowledge of or deliberate indifference to a risk of harm.

Nevertheless, "[t]he question of whether the official knew of a substantial risk is a factual one subject to demonstration in the usual ways, including inference from circumstantial evidence." *Young v. Selk*, 508 F.3d 868 (8th Cir. 2007). Therefore, the Court will consider whether the circumstances Plaintiff identifies amount to sufficient circumstantial evidence to generate an inference of a substantial risk of harm.

In *Young*, the court concluded that the inmate had presented sufficient evidence to avoid summary judgment on the question of the defendants' knowledge of a risk of harm:

> He testified that he told both the officials that he had been threatened by Mr. Whitefeather [another inmate], that his circumstances were urgent, that he needed to be moved immediately, and that it was an emergency. In addition, he testified that he told Sergeant Coolidge that Mr. Whitefeather was "deranged," and that Mr. Brown told Sergeant Coolidge that there was "something wrong" with Mr. Whitefeather. We think that the information provided to the defendants was sufficient to support a finding that they were aware of a substantial risk of serious harm to Mr. Young.

*Young*, 508 F.3d at 873–74. In this case, Plaintiff alleges that she begged Davis not to place a particular inmate with a conviction for sexual assault into her cell because she was a sexual assault victim. Filing 1 at 9 (¶ 36). Then after she verified with unnamed corrections officers that the facility still intended to place the inmate in her cell, she complained to Cruickshank, Filing 1 at 9 (¶¶ 36–37). To that extent, the circumstances are like those in *Young*. What is missing in this case is that Plaintiff has not alleged that she told any prison official anything at all about the prospective cellmate's behavior that she had witnessed firsthand or any threat he had made to her that might have suggested that her fears were based on anything other than speculation. *See Young*, 508 F.3d at 873 (explaining that both the plaintiff's statement of a need to move the cellmate and her statements to prison officials about his threats to the plaintiff and his other "deranged" conduct created an inference of a risk of harm to the plaintiff).

26

To put the matter squarely in terms of the requirements for a failure-to-protect claim, the Court finds that Plaintiff relies on allegations amounting to no more than speculation to support the objective component of a substantial risk of serious harm to her from the prospective cellmate. *See Vandervender*, 970 F.3d at 975 (first requirement); *see also In re Pre-Filled Propane Tank Antitrust Litig.*, 893 F.3d at 1056 (explaining that the pleadings must allege facts sufficient to raise the right to relief above the speculative level). As to the "deliberate indifference" requirement, *see Vandevender*, 970 F.3d at 975 (second requirement), Plaintiff's allegations do not suggest that she was faced with any "pervasive" risk of harm to which prison officials failed to respond. *See id.* at 977. Plaintiff has not alleged, for example, that sexual assaults—and in particular sexual assaults on transgender inmates—occurred at all at the Omaha Correctional Center or occurred with sufficient frequency that inmates were put in reasonable fear for their safety and that prison officials were reasonably apprised of the problem and the need to take protective measures. *Id.*

Finally, the Court agrees with the Moving Defendants' contention that Plaintiff alleges no more than *de minimis* injury as the result of the placement of a prisoner with a prior conviction for sexual assault in her cell. It is true that "[c]laims under the Eighth Amendment require a compensable injury to be greater than *de minimis*." *Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008). The Court must accept as true Plaintiff's allegation that "[t]he objectionable inmate wouldn't stop touching plaintiff and playing with her in her sleep." Filing 1 at 10 (¶ 41); *see also Spagna*, 30 F.4th at 715 (explaining that on a Rule 12(c) motion the court must accept as true the plaintiff's factual allegations). Even so, Plaintiff has not alleged any physical injury from the cellmate's conduct and simply invites the Court to speculate that she suffered a compensable psychological or emotional injury. *See In re Pre-Filled Propane Tank Antitrust Litig.*, 893 F.3d at

1056 (explaining that the pleadings must allege facts sufficient to raise the right to relief above the speculative level).

Under these circumstances, Moving Defendants Davis and Cruickshank are entitled to judgment on the pleadings on Plaintiff's claim of an Eighth Amendment violation based on alleged failure to protect Plaintiff from a serious risk of harm. The other Moving Defendants are also entitled to judgment on the pleadings on this claim because there are no allegations of their individual involvement in the alleged constitutional violation as required for liability under § 1983. *See Davis*, 794 F.3d at 1013 ("As § 1983 liability for damages for a federal constitutional tort is personal, each defendant's conduct must be independently assessed.").

### III. CONCLUSION

Upon the foregoing,

IT IS ORDERED that the Motion for Judgment on the Pleadings, Filing 66, by Defendants Scott Frakes, Diane Sabatka-Rine, Barbara Lewien, Rob Britten, Thomas Davis, Richard Martin, Ryan LaFave, and Rich Cruickshank (the Moving Defendants), in their individual capacities, is granted and judgment on the pleadings pursuant to Rule 12(c) shall enter in favor of all Moving Defendants.

Dated this 30th day of June, 2022.

BY THE COURT:

Brian C. Buescher
United States District Judge