IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JANE DOE,<br><br>    Plaintiff,<br><br>  vs.<br><br>SCOTT FRAKES, Director of the Department of Corrections, In His Official Capacity; RANDY T. KOHL, Former Director of Health Services at Department of Correctional Services; JEFFREY A. DAMME, Medical Doctor, In His Individual Capacity; CORRECT CARE SOLUTIONS LLC; KATHLEEN OGDEN, Medical Doctor and Omaha Correctional Center Facility Health Administrator, In Her Individual Capacity; and MARGARET ANTLEY, Physician Assistant at Omaha Correctional Center, In her Individual Capacity,<br><br>    Defendants. | **8:20CV128**<br><br><br><br>**MEMORANDUM AND ORDER REGARDING REMAINING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT** |

A transgender inmate in the Nebraska correctional system who is transitioning to female brought this action pursuant to 42 U.S.C. § 1983 alleging violations of her rights under the Eighth Amendment against various employees and contractors of the Nebraska Department of Correctional Services (NDCS) and seeking injunctive and monetary relief. Filing 1 at ¶¶ 1–16, 61–65 (identifying the nature of the action and the parties).[1] This case is before the Court on two dispositive motions filed on June 15, 2022: (1) a Motion for Summary Judgment by defendant

---

[1] Citations to the Complaint and to the parties' statements of facts are to the docket number of the filing and the numbered paragraph of the statement (*e.g.*, Filing 1 at ¶ 1 (Complaint, first numbered paragraph); Filing 90 at ¶ 8 (Remaining State Defendants' Statement of Facts, eighth numbered paragraph)). Citations to other documents in the record are to the docket number of the filing and the docket page number (*e.g.*, Filing 90 at 22 (Remaining State Defendants' Brief, docket page 22)).

Dr. Jeffrey A. Damme and defendant Correct Care Solutions, LLC (the CCS Defendants), Filing 84; and (2) a Motion for Summary Judgment, Filing 87, by parties the Court will call the Remaining State Defendants. For the reasons set out below, the Motions for Summary Judgment are both granted.

## I.  INTRODUCTION

### A.  Synopsis

In a prior ruling in this case, this Court construed plaintiff Jane Doe's[2] Complaint to attempt to allege violations of two aspects of the Eighth Amendment right to be free from cruel and unusual punishment: (a) her right to receive all medically necessary care for her gender dysphoria, and (b) her right to be protected from another inmate. Filing 97 at 2. After this Court's ruling on a motion for judgment on the pleadings by several defendants, Filing 97, the only remaining claims relate to alleged denial of medically necessary care, and the only remaining defendants are the CCS Defendants and the Remaining State Defendants—Scott Frakes, in his official capacity, and Dr. Randy Kohl, Dr. Kathleen Ogden, and Margaret Antley, in their individual capacities.

The Motions for Summary Judgment are both granted for essentially the same reasons. Doe lacks medical expert evidence to support her claims against these defendants. Doe's unsupported medical conclusions cannot create a question of fact about whether the defendants' medical decisions were reasonable, negligent, grossly negligent, or so ineffective as to be criminally reckless, rising to the level of deliberate indifference. Without medical evidence, no reasonable jury could conclude that the providers were deliberately indifferent to Doe's serious medical need.

---

[2] Plaintiff Jane Doe alleges that she "brings this action under an assumed name due to the fact that she is a victim of sexual assault." Filing 1 at ¶ 3.

2

Defendant Frakes is also entitled to summary judgment on the claim against him in his official capacity for prospective injunctive relief. Doe has failed to generate genuine issues of material fact on her deliberate indifference claim or that there is any likelihood that the hormone therapy she is now receiving for her gender dysphoria will be interrupted, so she is not entitled to prospective injunctive relief.

## B.  Factual Background

A determination of what facts are genuinely controverted in this case has been made remarkably difficult by Doe's responses to most of the defendants' statements of undisputed material facts. Indeed, Doe concedes that only six of the forty-five statements of fact by the CCS Defendants are undisputed or uncontroverted. Yet, in many instances, her purported ground for disputing a factual statement has nothing to do with the fact stated and instead asserts that additional facts are relevant.[3] Doe concedes that nineteen of forty-two statements by the Remaining State Defendants are not disputed or not controverted, but again her grounds for disputing other factual statements are often equally off point.[4] Under these circumstances, the

---

[3] For example, the CCS Defendants state, "3. Before leaving D&E, their (D&E's) records reflect they could not verify any prescription for hormones or diagnosis of gender dysphoria (or any gender-related or transgender-related diagnosis), and reflect that Doe was told this information (that they were unable to verify a diagnosis or prescription)," citing, *inter alia*, Exh. L – STATE DEF 327 (Filing 86-13 at 1). Filing 85 at ¶ 3. The document cited is an "inmate interview request" (IIR) from Doe dated 5/14/2014 complaining that Doe was not receiving her hormone pills, with a response dated 5/22/14 stating that "medical . . . have not received an active prescription or records from a provider that they can verify you were taking [hormone treatment] in the community." Filing 85 at ¶ 3. In her response to the defendants' statement of facts, Doe states, "Defendants' statement of facts number 3 is disputed," but she then cites and sets out facts from a different IIR dated 5/2/14 and response dated 5/5/14. Filing 101-3 at 1. The earlier IIR cited by Doe does nothing to controvert the defendants' statement about the later IIR and the response upon which they rely.

[4] For example, the Remaining State Defendants state, "18. Around September 3, 2015, Doe filled out an Inmate Interview Request ('IIR') asking for a status update about Doe receiving hormone therapy. Dr. Damme responded to Doe by telling her to write to Dr. Kohl." Filing 90 at ¶ 18. Doe responds that this fact is "disputed," engages in a very lengthy discussion of all the times she asserts she told someone in the NDCS that she wanted hormone therapy, then at the end of her recitation states, "Around September 3, 2015, Doe filled out an Inmate Interview Request ('IIR') asking for a status update about Doe receiving hormone therapy. Dr. Damme responded to Doe by telling her to write

3

Court concludes that it will simply provide a brief factual summary for context here—drawn primarily from Doe's own Complaint, which she cannot dispute—and address further material facts, both disputed and undisputed, in the legal analysis of each Motion for Summary Judgment below.

Doe alleges that she is a transgender individual who had been diagnosed with gender dysphoria and was transitioning to be a woman at the time of her conviction in 2013. Filing 1 at ¶¶ 17–20. She was given a maximum-security classification and placed at Tecumseh State Correctional Institute (TSCI). Filing 1 at ¶ 24. While there, Doe continually requested medical treatment for her gender dysphoria, but she was told by NDCS employees and medical contractors that there was no medical need for such treatment. Filing 1 at ¶¶ 23, 25. After an evaluation in December 2015, however, her diagnosis was confirmed; in January 2016, a treatment plan was adopted; and in April 2016, Doe was supplied with prescribed medications to treat her condition. Filing 1 at ¶¶ 26, 28–29. In September 2016, Doe was transferred to the Omaha Correctional Center (OCC). Filing 1 at ¶ 30. Doe alleges that she was denied necessary medical treatment, including hormone therapy and gender conforming surgery, before and after her transfer to the OCC. Filing 1 at ¶¶ 31–60.

### C.  Procedural Background

Doe filed her Complaint in this action on March 31, 2020. Filing 1. As mentioned above, the Court construes Doe's claim to attempt to allege violations of two aspects of the Eighth Amendment right to be free from cruel and unusual punishment: (a) her right to receive all medically necessary care for her gender dysphoria, and (b) her right to be protected from another

---

to Dr. Kohl." Filing 106 at ¶ 18. Thus, the appropriate response to defendants' statement in paragraph 18 would be "undisputed."

inmate. Filing 97 at 2. Doe sued all defendants in their individual capacities for monetary damages and defendant Scott Frakes, the Director of the NDCS, in his official capacity, for injunctive relief requiring him to "provide [her] with all medically necessary care," including hormone therapy and gender conforming surgery. Filing 1 at ¶¶ 64–65, Prayer. All but one of the defendants filed separate Answers between April 21, 2020, and April 30, 2020. Filings 15–24, 26. The last defendant filed his Answer on May 29, 2020. Filing 35. The deadline for filing motions to dismiss and motions for summary judgment was May 4, 2021. Filing 45. That deadline was later extended to June 15, 2022. Filing 57.

Several defendants filed a Motion for Judgment on the Pleadings on March 28, 2022. Filing 66. On June 30, 2022, this Court granted that Motion and directed that judgment on the pleadings pursuant to Rule 12(c) enter in favor of defendants Scott Frakes, Diane Sabatka-Rine, Barbara Lewien, Rob Britten, Thomas Davis, Richard Martin, Ryan LaFave, and Rich Cruickshank, all in their individual capacities. Filing 97.

On June 15, 2022, prior to the Court's ruling on the Motion for Judgment on the Pleadings, some of the same defendants and additional defendants filed the Motions for Summary Judgment now before the Court. The first motion before the Court is the Motion for Summary Judgment, Filing 84, by the CCS Defendants—Dr. Jeffrey Damme and his employer, Correct Care Solutions, LLC. Dr. Damme worked at TSCI pursuant to a contract between Correct Care Solutions and the State of Nebraska to provide medical services to TSCI inmates. Filing 85 at 4. Doe's claim against these defendants is solely related to medical treatment, solely for the period Doe was incarcerated at TSCI (from May 27, 2014, to the end of August 2016), and solely for money damages. Doe filed her Opposition to Motion for Summary Judgment of Defendant[s] Damme and CCS, Filing 101, on July 6, 2022, and the CCS Defendants filed their Reply, Filing 112, on August 3, 2022.

The second motion before the Court is a Motion for Summary Judgment, Filing 87, by parties the Court calls the Remaining State Defendants. That Motion states that it is brought by "Defendants Scott Frakes, in his official and individual capacities, Rob Britten, Richard Martin, Thomas Davis, Barbara Lewien, Rich Cruickshank, Diane Sabatka-Rine, and Ryan Lafave, all in their individual capacities." Filing 87 at 1. However, the supporting brief, Filing 90, also argues for summary judgment in favor of defendants Dr. Randy Kohl, *see, e.g.*, Filing 90 at 24; Dr. Kathleen Ogden, *see, e.g.*, Filing 90 at 24; and Margaret Antley, a physician's assistant, *see, e.g.*, Filing 90 at 35. Also, the Court already granted judgment on the pleadings in favor of defendants Scott Frakes, Diane Sabatka-Rine, Barbara Lewien, Rob Britten, Thomas Davis, Richard Martin, Ryan LaFave, and Rich Cruickshank, all in their individual capacities. *See* Filing 97 at 28. Thus, the Remaining State Defendants are Scott Frakes, in his official capacity only, and Dr. Randy Kohl, Dr. Kathleen Ogden, and Margaret Antley, in their individual capacities. The claim against these Remaining State Defendants is for denial of medical care, and the only defendant sued in his official capacity, and consequently the only defendant against whom Doe can obtain injunctive relief, is Scott Frakes.[5] Doe filed her Opposition to Motion for Summary Judgment of the State Defendants, Filing 106, on July 20, 2022, and the Remaining State Defendants filed their Reply, Filing 113, on August 3, 2022.

---

[5] In her Complaint, Doe seeks "[a]n Injunction requiring the State Defendant provide Plaintiff with all medically necessary care." Filing 1 at Prayer. There is no request for injunctive relief related to the failure-to-protect claim. The only Remaining State Defendant Doe has alleged was involved in the failure-to-protect conduct, Scott Frakes, has already been granted judgment on the pleadings on that claim against him in his individual capacity.

## II.  STANDARDS FOR SUMMARY JUDGMENT

The Motions now before the Court are both for summary judgment. Before considering those Motions separately, the Court will set out the standards for summary judgment applicable to both.

Under Rule 56 of the Federal Rules of Civil Procedure, "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id.

Somewhat more specifically, the Eighth Circuit Court of Appeals has explained,

> "Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." [Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc)] (quotations omitted). A fact is "material" if it may "affect the outcome of the suit." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "An issue is genuine if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party." Schilf v. Eli Lilly & Co., 687 F.3d 947, 948 (8th Cir. 2012) (quotations omitted).

Erickson v. Nationstar Mortg., LLC, 31 F.4th 1044, 1047–48 (8th Cir. 2022). To put the "materiality" requirement slightly differently, "'[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" Rusness v. Becker Cnty., 31 F.4th 606, 614 (8th Cir. 2022) (quoting Doe v. Dardanelle Sch. Dist., 928 F.3d 722, 725 (8th Cir. 2019), in turn quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

On a motion for summary judgment, "a district court should 'not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue.'" Avenoso v.

*Reliance Standard Life Ins. Co.*, 19 F.4th 1020, 1024 (8th Cir. 2021) (quoting *Great Plains Real Est. Dev., L.L.C. v. Union Cent. Life Ins.*, 536 F.3d 939, 943-44 (8th Cir. 2008)). Instead, the court must view the evidence in the light most favorable to the non-moving party and afford that party all reasonable inferences supported by the evidence. *Grinnell Mut. Reinsurance Co. v. Dingmann Bros. Constr. of Richmond, Inc.*, 34 F.4th 649, 652 (8th Cir. 2022); *Pearson v. Logan Univ.*, 937 F.3d 1119, 1124 (8th Cir. 2019).

The parties bear specific burdens on a motion for summary judgment. "The moving party bears the burden of showing the absence of a genuine dispute." *Glover v. Bostrom*, 31 F.4th 601, 603 (8th Cir.) (citing Fed. R. Civ. P. 56(a)), *reh'g denied*, No. 20-2884, 2022 WL 1564097 (8th Cir. May 18, 2022). Thus, "'[t]he movant bears the initial responsibility of informing the district court of the basis for its motion, and must identify those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Mensie v. City of Little Rock*, 917 F.3d 685, 688 (8th Cir. 2019) (quoting *Torgerson*, 643 F.3d at 1042).

The burden on the resisting party is heavier:

> The party opposing summary judgment must "cit[e] particular materials in the record" or show that the "materials cited do not establish the ... absence of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "A mere 'scintilla of evidence' is insufficient to defeat summary judgment, and if a nonmoving party who has the burden of persuasion at trial does not present sufficient evidence as to any element of the cause of action, then summary judgment is appropriate." *Wagner v. Campbell*, 779 F.3d 761, 766 (8th Cir. 2015), quoting *Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 820 (8th Cir. 2010).

> Similarly, if the movant has supported its motion for summary judgment, the party opposing summary judgment "may not simply rest on the hope of discrediting the movant's evidence at trial." *United States v. 3234 Washington Ave. N.*, 480 F.3d 841, 844 (8th Cir. 2007) ("3234 Washington"). Where the testimony of the movant's witnesses is critical, if the testimony is "positive, internally consistent, unequivocal, and in full accord with the documentary exhibits," "then the opposing party cannot force a trial merely to cross-examine the witness or in the hope that something might turn up at the trial." *Id.* at 845 (quotations omitted);

*Nationwide Prop. & Cas. Ins. Co. v. Faircloth*, 845 F.3d 378, 382 (8th Cir. 2016). But summary judgment is improper where specific facts "even partially" undermine the witness's credibility in a material way. *3234 Washington*, 480 F.3d at 845.

*Erickson*, 31 F.4th at 1048. Thus, "'[t]o show a genuine dispute of material fact, a party must provide more than conjecture and speculation. Rather the nonmovant has an affirmative burden to designate specific facts creating a triable controversy.'" *Rusness*, 31 F.4th at 614 (quoting *McConnell v. Anixter, Inc.*, 944 F.3d 985, 988 (8th Cir. 2019)).

The Court will apply these standards to each of the pending Motions for Summary Judgment in turn.

### III. THE CCS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The first of those Motions is by the CCS Defendants, Dr. Jeffrey A. Damme and Correct Care Solutions. Despite Doe's assertions that nearly all the factual statements by these defendants are disputed, few are properly controverted, and the evidentiary holes in Doe's case mean that no reasonable jury could find in her favor on her claims against these defendants.

#### A. Factual Background

As mentioned above, gleaning the undisputed facts from the parties' statements of fact has been a challenge. The facts stated here do not include all the parties' allegations and may not be stated in precisely the form the parties presented them. Although the Court will set out some of the factual disputes, the Court will focus on the undisputed facts, including facts indisputably established by documents submitted by the parties and facts deemed admitted pursuant to the applicable local rule because Doe has disputed but failed to controvert them. *See* NECivR 56.1(b)(1) ("Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response."). The focus here is on the CCS Defendants' responses to Doe's treatment requests. In analyzing the movants' specific grounds for summary

judgment, the Court will consider more specifically whether there are genuine issues of material fact precluding summary judgment.

Dr. Jeffrey A. Damme worked for CCS, which had contracted with the State of Nebraska to provide medical services for inmates incarcerated at TSCI. Filing 85 at ¶ 1. Doe agrees that Dr. Damme was only involved in her care when she was lodged at TSCI and that her action against the CCS Defendants is an action for monetary relief. Filing 101 at ¶ 1. Before Doe was transferred from the Diagnostic and Evaluation Center (D&E) to TSCI, D&E could not verify Doe's claims of a prescription for hormone therapy or a diagnosis of gender dysphoria (or any gender-related or transgender-related diagnosis),, and D&E's records reflect that Doe was told this information. Filing 85 at ¶ 3; *see, supra*, n.3. Dr. Damme contends that he had several encounters with Doe before she ever mentioned to him a desire for hormone treatment, Filing 85 at ¶¶ 9–21, while Doe contends that her medical chart indicates that she repeatedly told medical staff at TSCI that she wanted to continue her hormone treatment, *see, e.g.,* Filing 101 at ¶ 9. Doe asserts that Dr. Damme testified that the medical records of an inmate are all kept together—including their medical record, lab work, x-rays, dental, psychology, and mental health—apparently suggesting that Dr. Damme had notice of her desire for treatment for gender dysphoria from those records. Filing 101 at ¶ 11. Doe also points out that Dr. Damme admitted that he had no experience treating gender dysphoria, that it was not within his scope of practice, and that he was not familiar with how to determine if a patient needed estrogen treatment. Filing 101 at ¶ 21 (citing Filing 86-3 (Dr. Damme's Depo., 47:15–48:3)).

More specifically, Dr. Damme's first encounter with Doe occurred in August 2014 when Doe sent a "kite" to the medical department, while she was under a dental provider's care, complaining about being unable to eat hard shell tacos, potato chips, nachos, etc., in response to

10

which Dr. Damme ordered a soft diet for her. Filing 85 at ¶ 10. Nothing was mentioned about hormones or gender-related treatment at that time. Filing 85 at ¶ 11. Dr. Damme's second encounter with Doe was in September 2014 and was a stomach-related issue that Dr. Damme described as "diffuse abdominal pain" and for which he ordered an x-ray. Filing 85 at ¶ 13. That x-ray was conducted September 17, 2014, and it was read by both an outside physician and Dr. Damme. Filing 85 at ¶ 13. Dr. Damme asserts that Doe did not mention any gender-related issues or untreated medical condition or that she was upset about wanting hormone treatments at that time. Filing 85 at ¶ 15. Doe disputes this fact on the ground that Dr. Damme overlooked the obvious situation that she was a woman in a men's prison and that she had complained to other medical providers of the abrupt discontinuance of her hormone therapy, which was necessary treatment for her gender dysphoria. Filing 101 at ¶ 15. Dr. Damme followed up with Doe later that month and diagnosed mild constipation. Filing 85 at ¶ 17. Dr. Damme asserts that if other concerns had been reported, he would have charted them. Filing 85 at ¶ 17. Doe alleges that she did not persist in making requests for gender treatment because all her previous requests had been denied. Filing 101 at ¶ 17.

Although Doe saw other medical and dental providers over the next ten months, she did not see Dr. Damme again until July 2015, when she expressed concerns about HIV from a razor. Filing 85 at ¶ 20. Doe contends that she requested both a Hepatitis C test and an HIV test in June 2015, then complained again that the tests had not occurred. Filing 101 at ¶ 20. She alleges Dr. Damme responded that she had not had a significant exposure and had been previously checked in January 2015. Filing 101 at ¶ 20; *see also* Filing 86-5 at 1 (IIR and response). Dr. Damme saw Doe again at the end of July 2015 about hemorrhoids, but Doe made no request for hormones and did not mention gender dysphoria or any other untreated condition. Filing 85 at

¶ 21. Doe reiterates that she was still a transgender person and was not being treated for her condition. Filing 101 at ¶ 21.

Dr. Damme alleges that he first learned of Doe's desire for hormones in an IIR dated August 13, 2015. Filing 85 at ¶ 25. Dr. Damme saw Doe on August 24, 2015, and his notes in her medical records show the following:

> P[atien]t's main concern is that inmate wants put back on estrogen therapy as the inmate is losing all of the hormone features. Pt states that the ACLU is working on the case. Inmate cannot remember prescribing doctor or the name & dose of estrogen that the inmate was taking. I informed inmate that I will discuss concerns at upcoming med staff meeting.

Filing 85 at ¶ 26; Filing 86-25 at 1 (medical record). As promised, Dr. Damme raised the matter at a meeting of the medical staff and his memory was that there was not really a protocol in place, so Dr. Kohl requested that Doe send an IIR to him about the issue. Filing 85 at ¶ 29. When Dr. Damme saw Doe again in September 2015 to revisit the constipation diagnosis, Doe said nothing about the hormone issue, and Dr. Damme understood that issue was being handled by Dr. Kohl. Filing 85 at ¶ 30. Doe points out that Dr. Kohl responded to her request on September 14, 2015, stating in part,

> Administration staff at TSCI has previously correctly advised you that the Health Services Administrator is aware of your concerns and indicates that Dr. Damme has previously informed you that there is no medical indication for prescribing estrogen to you. Nebraska Department of Correctional Services Mental Health staff has been notified of the fact that you believe yourself to be suffering from depression.

Filing 101-3 at 5. No party has identified a document in the record showing precisely when, if ever, Dr. Damme told Doe or anyone else that there was no medical indication for prescribing estrogen to Doe. The statement in Dr. Kohl's response is hearsay. Doe does not appear to dispute

(or does not properly dispute) that in 2015, the State of Nebraska did not have a written protocol in place related to treatment of gender dysphoria. Filing 85 at ¶ 32.

Eventually, in December 2015, a mental health provider diagnosed Doe with gender dysphoria. Filing 85 at ¶ 33. Doe insists this was confirmation of a previous diagnosis. Filing 101 at ¶ 33. Doe does not dispute that Dr. Damme's next contact with her was in early January 2016, in response to an IIR to the medical staff that she had received the gender dysphoria diagnosis. Filing 85 at ¶ 34. Dr. Damme alleges that he then arranged for Doe to be treated by an obstetrician specialist, Dr. Amoura, and to explore hormones. Filing 85 at ¶ 36. Doe contends there is no evidence that Dr. Damme arranged such treatment. Filing 101 at ¶ 36. Dr. Amoura saw Doe in March 2016 and prescribed hormone treatment which was authorized by Dr. Damme on April 1, 2016. Filing 85 at ¶ 37; Filing 101 at ¶ 37.

The parties agree Doe was transferred from TSCI to Omaha Correctional Center (OCC) at the end of August 2016, and that Dr. Damme had no further contact with her after that transfer. Filing 85 at ¶ 41.

### B. The Parties' Arguments

The CCS Defendants argue that the logical starting point for their Motion is the standard of care for analysis of medical malpractice under Nebraska law. Filing 85 at 16. They contend, however, that Doe has offered no expert proof of that standard or that its breach caused any injury in this case. Filing 85 at 16–17. They then argue that, because Doe cannot reach the higher bar of medical malpractice, she cannot demonstrate deliberate indifference under § 1983. Filing 85 at 18. More specifically, as to the "objective" element of a deliberate indifference claim, a serious medical need, the CCS Defendants argue that the undisputed facts show that no one was able to verify a pre-incarceration diagnosis of gender dysphoria or a prescription for hormone therapy for

13

Doe. Filing 85 at 19. They point out that Doe now tries to repackage her claim to be that she needed such a diagnosis, not that she had one. Filing 85 at 19. They also argue that Dr. Damme saw Doe for the conditions she was complaining about in each IIR, so there is no evidence that a serious medical need was being ignored. Filing 85 at 19–20.

Next, the CCS Defendants argue that there is no evidence of deliberate indifference to any serious medical need, the second element of Doe's claim. Filing 85 at 20. They argue that the medical records reflect that Doe was treated for the conditions she raised, the care was adequate, and Doe cannot prevail simply by complaining that she did not think the care was adequate. Filing 85 at 21. Similarly, the CCS Defendants argue that there is no expert opining on Doe's behalf that Dr. Damme's conduct proximately caused any injury, either medical or psychiatric. Filing 85 at 22.

Finally, these defendants argue that if Dr. Damme is entitled to summary judgment, so is CCS, because Doe asserts only *respondeat superior* liability of CCS for Dr. Damme's conduct. Filing 85 at 22.

In response, Doe argues that she repeatedly reported her previously diagnosed gender dysphoria and, even without such notice, her condition was so obvious that even a layman would perceive that she needed treatment. Filing 101 at 25. She contends that the issue is not one of medical malpractice, but whether Dr. Damme knew of a serious medical need and was deliberately indifferent to it. Filing 101 at 25. Again, Doe seems to imply that Dr. Damme should have known of her need for medical treatment from her medical records, even if she did not tell him directly. Filing 101 at 26. Doe then asserts that courts have recognized that gender dysphoria is a serious medical need. Filing 101 at 29–31.

14

Doe contends that Dr. Damme was deliberately indifferent to her serious medical need because there really is no dispute that he was aware of the need for treatment at least in August 2015. Filing 101 at 31. She contends that it took several months more, until December 2015, to confirm her diagnosis, and another four months after that, until April 2016, to authorize hormone treatment, meaning that she went two years at TSCI without treatment, despite repeated requests. Filing 101 at 32. In short, Doe contends that there is sufficient evidence to present a jury question on whether the CCS Defendants were deliberately indifferent to her serious need for gender dysphoria treatment. Filing 101 at 36.

### C.  Legal Analysis

*1.  Governing Law*

As noted above, in Section II, "'[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Rusness*, 31 F.4th at 614 (quoting *Dardanelle Sch. Dist*., 928 F.3d at 725, in turn quoting *Anderson*, 477 U.S. at 248). Here, the "governing law" is the standard for a "deliberate indifference" claim against prison medical providers.

As the Eighth Circuit Court of Appeals has explained, "[t]he Constitution prohibits 'cruel and unusual punishments.' U.S. Const. amend. VIII. A state violates this prohibition when it is deliberately indifferent to a prisoner's serious medical needs." *De Rossitte v. Correct Care Sols., LLC*., 22 F.4th 796, 802 (8th Cir. 2022). "The plaintiff must show (1) 'an objectively serious medical need,' and (2) 'that the defendant knew of and disregarded that need.'" *Redmond v. Kosinski*, 999 F.3d 1116, 1120 (8th Cir. 2021) (quoting *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)). "As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their

independent medical judgment." *Id.* (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)).

More specifically, when a medical professional is the defendant, "[n]egligence is not enough." *Id.* Rather,

> [t]o survive summary judgment, [an inmate] must show grossly incompetent or inadequate care "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Dulany*, 132 F.3d at 1242 (citation omitted). But "medical treatment may so deviate from the applicable standard of care as to evidence a physician's deliberate indifference." *Moore v. Duffy*, 255 F.3d 543, 545 (8th Cir. 2001). "Often whether such a significant departure from professional standards occurred is a factual question requiring expert opinion to resolve." *Id.* This inquiry is factually intensive and presents a "substantial evidentiary threshold" to show that medical providers "deliberately disregarded the inmate's needs by administering an inadequate treatment." *McRaven v. Sanders*, 577 F.3d 974, 982 (8th Cir. 2009) (citation omitted).

*Redmond*, 999 F.3d at 1120. Thus, a prisoner does not clear this "substantial evidentiary threshold," if the prisoner presents no medical expert's evidence that the medical professional's actions did not meet the standard of care for that professional. *Id.*

Similarly,

> When an inmate claims that a delay in medical care violates the Eighth Amendment, "the objective seriousness of the deprivation should also be measured 'by reference to the effect of delay in treatment.'" *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005) (cleaned up) (citation omitted). "A prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials ignored an acute or escalating situation or that these delays adversely affected his prognosis." *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (cleaned up) (citation omitted). And if the treatment is for a sophisticated medical condition, "testimony is required to show proof of causation." *Alberson v. Norris*, 458 F.3d 762, 765–66 (8th Cir. 2006).

*Redmond*, 999 F.3d at 1121.

Thus, an inmate's "unsupported medical conclusions cannot create a question of fact about whether the defendants' medical decisions were reasonable, negligent, grossly negligent, or so

16

ineffective as to be criminally reckless, rising to the level of deliberate indifference. Without medical evidence, no reasonable jury could conclude that the providers were deliberately indifferent to [an inmate's] serious medical need." *Id.*

    2.  *Doe's Claim against the CCS Defendants Fails under the Governing Law*

        a.  Doe Fails to Generate a Jury Question as to Dr. Damme

Assuming without deciding that gender dysphoria is an objectively serious medical condition requiring treatment, Doe's claim fails on the second element of her claim, proof of deliberate indifference to that need. *See id.* at 1120 (stating the elements of the claim). No reasonable jury could find that Dr. Damme was deliberately indifferent, *see Erickson*, 31 F.4th at 1047–48 (reiterating the reasonable jury standard for summary judgment), where like the inmate in *Redmond*, Doe does not clear the evidentiary threshold. 999 F.3d at 1120; *id.* at 1121 ("Without medical evidence, no reasonable jury could conclude that the providers were deliberately indifferent to [an inmate's] serious medical need."). Doe must demonstrate grossly incompetent or inadequate care so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care, but she has not done so where she offers no expert opinion demonstrating departure from professional standards. *See id.* Indeed, prior to December 2015, Doe can point to nothing but her unsupported medical conclusion that she suffered from gender dysphoria and needed hormone treatment where Doe was unable to provide evidence of a medical diagnosis or prescription to support that conclusion. *See id.* at 1121.

No reasonable jury could find for Doe, even if the Court assumes that Dr. Damme had notice of Doe's requests for treatment for her gender dysphoria from her medical records. Doe puts much store in her appearance as a slight female in a men's prison. Even if Dr. Damme recognized that situation, however, Doe had no constitutional right to receive a particular or requested course

of treatment, and Dr. Damme, as a prison doctor, remained free to exercise his independent medical judgment to conclude that Doe's gender condition did not require immediate treatment. *See id.* Without expert evidence, Doe has not pointed to any evidence generating a jury question that Dr. Damme did anything that departed so grossly from the applicable standard of care as to evidence a physician's deliberate indifference. *See id.* The record shows beyond dispute that once Doe directly informed Dr. Damme of her desire for gender treatment in August 2015, Dr. Damme referred the matter to the medical group and Dr. Kohl. Filing 85 at ¶¶ 26, 29; Filing 86-25 at 1 (medical record). Doe thereafter received a diagnosis of gender dysphoria and a treatment program. Filing 85 at ¶ 37; Filing 101 at ¶ 37.

Similarly, Doe has not pointed to any expert testimony supporting a claim that any delay in treating her condition—either prior to or after Doe directly informed Dr. Damme of her desire for gender identity treatment—from which a reasonable jury could conclude that the delay was the result of any deliberate indifference. *See Redmond*, 999 F.3d at 1121 (requiring such evidence). Doe offers no verifying medical evidence that Dr. Damme ignored an acute or escalating situation or that any delay was adversely affecting Doe's prognosis. *See id.* Indeed, all the evidence in the record demonstrates that gender dysphoria is a sophisticated medical condition, so that expert testimony, which Doe lacks, "is required to show proof of causation." *See id.*

Thus, as in *Redmond*, Doe's "unsupported medical conclusions cannot create a question of fact about whether the defendants' medical decisions were reasonable, negligent, grossly negligent, or so ineffective as to be criminally reckless, rising to the level of deliberate indifference." *See id.* "Without medical evidence, no reasonable jury could conclude that the providers were deliberately indifferent to [Doe's] serious medical need." *Id.*; *accord Erickson*, 31 F.4th at 1047–48 (explaining the reasonable jury standard for summary judgment generally). Thus,

18

the CCS Defendants are entitled to summary judgment in their favor on Doe's claim against Dr. Damme.

### b.  Doe Provides no Evidence to Support a Claim Against CCS

Finally, as to CCS, "[i]t is well settled that § 1983 does not impose respondeat superior liability." *Hughes v. Stottlemyre*, 454 F.3d 791, 798 (8th Cir. 2006). Furthermore, the Eighth Circuit Court of Appeals recently rejected a deliberate indifference claim by another prisoner against CCS, for the following reasons:

> As a private entity acting under color of state law, CCS may "only be held liable under § 1983 for its own unconstitutional policies." *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975–76 (8th Cir. 1993). The "test is whether there is a policy, custom or action by those who represent official policy that inflicts injury actionable under § 1983." *Id.* at 976. [The inmate] provides no evidence of any CCS policy, custom, or action by those representing official policy that inflicted a § 1983 injury. [The inmate's] deliberate indifference claims against CCS fail.

*De Rossitte*, 22 F.4th at 803–04 (footnote omitted). Like the inmate in *De Rossitte*, Doe provides not evidence of any CCS policy, custom, or action by those representing official policy that inflicted a § 1983 injury on her. *See id.* Thus, the CCS Defendants are also entitled to summary judgment in their favor on Doe's claim against CCS.

### D.  Summary

Doe's evidence in support of her deliberate indifference claim against Dr. Damme and CCS is wholly inadequate to survive summary judgment. The CCS Defendants' Motion for Summary Judgment is granted.

### IV. THE REMAINING STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The second motion now before the Court is the Motion for Summary Judgment by the Remaining State Defendants, Scott Frakes, in his official capacity only, and Dr. Randy Kohl, Dr. Kathleen Ogden, and Margaret Antley, in their individual capacities. Of these defendants, only

Scott Frakes is not a medical professional, but he is sued only in his official capacity for purposes of obtaining injunctive relief.

## A. Factual Background

Doe disputes a far smaller proportion of the factual statements by the Remaining State Defendants than she did of the factual statements by the CCS Defendants. Nevertheless, the Court will not attempt a thorough recitation of the undisputed and disputed facts asserted by the Remaining State Defendants. Rather, the Court will focus on allegations about the conduct of the Remaining State Defendants. Even then, the standards applicable to Doe's deliberate indifference claim mean that a detailed statement of the conduct of the Remaining State Defendants is not required for the disposition of their Motion for Summary Judgment.

Defendant Scott Frakes is the Director of NDCS. Filing 90 at ¶ 5. The parties offer no additional factual statements concerning Frakes. Defendant Randy Kohl is the former Deputy Director of Health Services at NDCS, but he retired on October 3, 2016. Filing 90 at ¶ 7. The parties set out essentially the same allegations concerning Dr. Kohl's involvement in Doe's medical treatment as the parties did in relation to CCS Defendants' Motion for Summary Judgment. *Compare supra*, beginning on page 12, *with* Filing 90 at ¶¶ 18–19; Filing 106 at ¶¶ 18–19. Defendant Kathleen Ogden is a physician employed by NDCS as the Facility Health Service Administrator at OCC. Filing 90 at ¶ 12. The Remaining State Defendants assert that Dr. Ogden was Doe's treating physician from September 2016 to June 2020 while Doe was incarcerated at OCC. Filing 90 at 33. Doe disputes that, however, alleging instead that Dr. Amoura was her treating physician while she was incarcerated at OCC. Filing 106 at 33. The parties agree that Dr. Ogden discontinued Doe's spironolactone medication, but they dispute precisely when and why she did so (because Doe was intentionally not taking the medicine as prescribed or because

20

Doe skipped the morning dose owing to side effects), how long it was before Doe was prescribed an alternative, when that alternative was approved, whether that alternative was adequate, and other aspects of her treatment. *Compare* Filing 90 at ¶¶ 26, 33, *with* Filing 106 at ¶¶ 26, 33. Defendant Margaret Antley was formerly employed by NDCS as a Physician Assistant at OCC. Filing 90 at ¶ 13. The parties agree that Antley denied Doe's request to see a specialist, although Doe adds that Antley denied that request when Doe's medications were abruptly discontinued. *Compare* Filing 90 at ¶ 35, *with* Filing 106 at ¶ 35. The parties otherwise agree that Antley reviewed Doe's IIR seeking referral to a specialist for gender dysphoria to determine if her request was new, or a duplicate, and that based on her review, Antley determined Doe's IIR had previously been denied and that Doe had been informed multiple times before that she was already seeing a specialist. Filing 90 at ¶ 35; Filing 106 at ¶ 35.

### B.  The Parties' Arguments

The Remaining State Defendants summarize their grounds for summary judgment in their favor as follows:

> (1) Doe's official capacity claims fail to generate an issue of material fact demonstrating a constitutional violation, or are moot; (2) State Defendants were not deliberately indifferent to any of Doe's serious medical needs; (3) Doe cannot establish that Frakes, Kohl, or Ogden violated her Eighth Amendment rights, including her lack of necessary expert testimony; (4) State Defendants, in their individual capacities, have not violated any clearly established constitutional right, entitling them [to] qualified immunity; (5) Doe fails to demonstrate physical injury to support a claim for compensatory damages under the Prison Litigation Reform Act; and (6) Doe failed to exhaust all administrative remedies for some of her claims, as required by 42 U.S.C. § 1997e.

Filing 90 at 15–16.

Doe's opposition does not squarely line up with the Remaining State Defendants' grounds for summary judgment. She argues that her gender dysphoria presents a serious medical need,

Filing 106 at 21; that the Remaining State Defendants violated her Eighth Amendment rights because all the treating professionals at the relevant time agreed she needed hormone therapy and her treating consultant indicated that she needed gender conforming surgery, Filing 106 at 28; denying gender conforming surgery amounts to deliberate indifference to a serious medical need where no medical professional has disagreed with that treatment, Filing 106 at 32; the Remaining State Defendants sued in their individual capacities are not entitled to qualified immunity, Filing 106 at 42; she is entitled to damages because the failure to treat her properly caused her physical injury as well as pain, suffering, and mental and emotional distress, Filing 106 at 43; and she has sufficiently exhausted her administrative remedies pursuant to 42 U.S.C. § 1997e to bring this action, Filing 106 at 47.

The Court finds it unnecessary to address all the parties' arguments to resolve the Remaining State Defendants' Motion for Summary Judgment under the governing law.

### C. Legal Analysis

*1. Governing Law*

Here, as was the case with the CCS Defendants' Motion for Summary Judgment, the "governing law" is the standard for a "deliberate indifference" claim against prison medical providers. Again, the applicable legal standard is set out in the *Redmond v. Kosinski*, 999 F.3d 1116, 1120–21 (8th Cir. 2021), which states the necessity of expert testimony to support such a claim.

2. *Doe's Claim against the Remaining State Defendants Fails under the Governing Law*

  a. Doe's Claim against the Prison Medical Professionals Fails for Lack of Expert Support

Assuming again without deciding that gender dysphoria is an objectively serious medical condition requiring treatment, Doe's claim against Dr. Kohl, Dr. Ogden, and P.A. Antley, who are sued in their individual capacities, fails on the second element, which requires proof of deliberate indifference to that serious medical need. *See id.* at 1120 (stating the elements of the claim). No reasonable jury could find these prison medical professionals were deliberately indifferent, *see Erickson*, 31 F.4th at 1047–48 (reiterating the reasonable jury standard for summary judgment), where like the inmate in *Redmond*, Doe does not clear the required evidentiary threshold, 999 F.3d at 1120; *id.* at 1121 ("Without medical evidence, no reasonable jury could conclude that the providers were deliberately indifferent to [an inmate's] serious medical need.").

Doe must demonstrate grossly incompetent or inadequate care so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care, but she has not done so where she offers no expert opinion demonstrating departure from professional standards by these prison medical professionals. *See Redmond*, 999 F.3d at 1121. At most, Doe argues that there is medical authority that supports hormone therapy and gender conforming surgery as treatment for gender dysphoria. *See, e.g.,* Filing 106 at 13 (pointing out that Dr. Amoura opines substantial research indicates gender affirming surgeries result in better long-term outcomes for patients and that nonmedical treatment, like prescription of female undergarments, has been demonstrated to be effective in relieving gender dysphoria). She does not identify any expert who opines that any of these prison medical professionals violated an applicable standard of care in her case.

23

No reasonable jury could find for Doe, even if the Court assumes that these prison medical professionals had notice of Doe's requests for treatment for her gender dysphoria from her medical records. Doe had no constitutional right to receive a particular or requested course of treatment, and these prison medical providers remained free to exercise their independent medical judgment to conclude that Doe's gender condition did not require immediate treatment. *Redmond*, 999 F.3d at 1121. Without expert evidence, Doe has not pointed to any evidence generating a jury question that these prison medical professionals did anything that departed so grossly from the applicable standard of care as to evidence a medical professional's deliberate indifference. *See id.* The record shows beyond dispute that once Doe directly informed Dr. Damme of her desire for gender treatment in August 2015, Dr. Damme referred the matter to the medical group and Dr. Kohl. Filing 85 at ¶¶ 26, 29; Filing 86-25 at 1 (medical record). Doe thereafter received a diagnosis of gender dysphoria and a treatment program. Filing 85 at ¶ 37; Filing 101 at ¶ 37.

Similarly, Doe has not pointed to any expert testimony supporting a claim that any delay in treating her condition—either before or after her transfer from TSCI to OCC—from which a reasonable jury could conclude that the delay was the result of any deliberate indifference. *See Redmond*, 999 F.3d at 1121 (requiring such evidence). Doe offers no verifying medical evidence that any prison medical professional ignored an acute or escalating situation or that any delay was adversely affecting Doe's prognosis. *See id.* Indeed, all the expert evidence in the record demonstrates that gender dysphoria is a sophisticated medical condition on which medical professionals disagree about treatments. *See, e.g.,* Filing 90 at ¶ 31 (setting out defendants' expert Dr. Levine's opinion that there is significant debate within the medical community about whether gender conforming surgery is a medical necessity); Filing 90 at ¶ 32 (setting out defendants' expert Dr. Deol's similar opinion and adding that there is no medical evidence to show that denying

access to gender conforming garments or cosmetics creates a substantial risk of serious harm to a gender dysphoria inmate and that Doe has been provided with reasonable and appropriate medical care, within the acceptable standard of care, to treat her gender dysphoria). Thus, expert testimony, which Doe lacks, "is required to show proof of causation." *See Redmond*, 999 F.3d at 1121.

Therefore, as in *Redmond*, Doe's "unsupported medical conclusions cannot create a question of fact about whether the defendants' medical decisions were reasonable, negligent, grossly negligent, or so ineffective as to be criminally reckless, rising to the level of deliberate indifference." *See id.* "Without medical evidence, no reasonable jury could conclude that the providers were deliberately indifferent to [Doe's] serious medical need." *Id.*; *accord Erickson*, 31 F.4th at 1047–48 (explaining the reasonable jury standard for summary judgment generally). The Remaining State Defendants who were prison medical professionals—Dr. Kohl, Dr. Ogden, and P.A. Antley—are entitled to summary judgment in their favor on Doe's claim against them.

### b. Doe's Claim against Frakes in his Official Capacity Fails

The Remaining State Defendants argue that because there is significant debate as to whether gender conforming surgery is medically necessary under an Eighth Amendment analysis, Doe's related official capacity claim against Frakes for injunctive relief fails. Filing 90 at 17. They argue further that because Doe is currently on an appropriate hormone therapy regimen, her related official capacity claim against Frakes for injunctive relief is moot and should be dismissed. Filing 90 at 17. Doe offers no response to this argument.

Prison officials sued in their official capacities have Eleventh Amendment immunity from claims for monetary relief. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985). On the other hand, a prison official can be sued in his or her official capacity for prospective injunctive relief. *See, e.g., Serna v. Goodno*, 567 F.3d 944, 952 (8th Cir. 2009); *Randolph v. Rodgers*, 253 F.3d 342, 348

(8th Cir. 2001). Even so, a claim for permanent prospective injunctive relief requires proof of actual success on the merits. *See Miller v. Thurston*, 967 F.3d 727, 736 (8th Cir. 2020) (pointing out that to obtain a preliminary injunction the claimant must prove only a likelihood of success on the merits, but to obtain a permanent injunction the claimant must prove actual success on the merits); *Lowry ex rel. Crow v. Watson Chapel Sch. Dist.*, 540 F.3d 752, 762 (8th Cir. 2008). In addition, where the record shows that the unconstitutional conduct a prisoner alleges could not reasonably be expected to recur, a claim for prospective injunctive relief is moot. *Prowse v. Payne*, 984 F.3d 700, 703 (8th Cir. 2021). Here Doe has failed to generate genuine issues of material fact on her deliberate indifference claim or that there is any likelihood that the hormone therapy she is now receiving for her gender dysphoria will be interrupted, so she is not entitled to prospective injunctive relief.

Therefore, the Remaining State Defendants are entitled to summary judgment on Doe's claim for injunctive relief against Frakes in his official capacity.

### D.  Summary

For essentially the same reasons Dr. Damme was entitled to summary judgment on Doe's deliberate indifference claim—lack of required expert evidence—so are the remaining prison medical professionals. Furthermore, defendant Frakes is entitled to summary judgment on the claim for injunctive relief against him for failure to generate genuine issues of material fact on actual success on a deliberate indifference claim or any likelihood a disruption of Doe's treatment for gender dysphoria will recur.

### E.  Other Grounds for Relief

The Court finds that summary judgment in favor of the Remaining State Defendants is appropriate on the merits of Doe's deliberate indifference claim, based on her failure to provide

the required expert evidentiary support for such a claim. That conclusion makes it unnecessary for the Court to reach the other grounds on which these defendants sought summary judgment.

## V.  CONCLUSION

Upon the foregoing,

IT IS ORDERED that

1.      The Motion for Summary Judgment by defendant Dr. Jeffrey A. Damme and defendant Correct Care Solutions, LLC (the CCS Defendants), Filing 84, is granted; and

2.      The Motion for Summary Judgment by defendants Frakes, Dr. Kohl, Dr. Odgen, and P.A. Antley (the Remaining State Defendants), Filing 87, is granted.

IT IS FURTHER ORDERED that judgment shall enter in favor of all defendants and against plaintiff Doe on all claims in this action.

Dated this 4th day of August, 2022.

BY THE COURT:

_____

Brian C. Buescher
United States District Judge

27